**IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA**

**September 2017 Term**

_____

No. 16-1069

_____

**FILED**
**November 1, 2017**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**STATE OF WEST VIRGINIA,**
Respondent

**V.**

**ORVILLE M. HUTTON,**
Petitioner

_____

**Appeal from the Circuit Court of Harrison County**
**Honorable James A. Matish, Judge**
**Criminal Action No. 13-P-119**

**REVERSED AND REMANDED**

_____

**Submitted: October 18, 2014**
**Filed: November 1, 2017**

Wiley W. Newbold
Morgantown, West Virginia
Attorney for Petitioner

Patrick Morrisey
Attorney General
Elbert Lin
Solicitor General
Thomas M. Johnson, Jr.
Deputy Assistant Attorney General
Gilbert Dickey
Assistant Attorney General
Zachary Viglianco
Assistant Attorney General
Charleston, West Virginia
Attorneys for Respondent

**JUSTICE DAVIS delivered the Opinion of the Court.**
**CHIEF JUSTICE LOUGHRY dissents and reserves the right to file a dissenting opinion.**

**JUSTICE WALKER dissents and reserves the right to file a dissenting opinion.**

**SYLLABUS BY THE COURT**

1. "Under *Padilla v. Kentucky*, 559 U.S. 356, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010), the Sixth Amendment requires defense counsel to warn an immigrant client of the deportation consequences of a guilty plea. When the deportation consequence is succinct, clear, and explicit under the applicable law, counsel must provide correct advice to the client. When the law is not succinct or straightforward, counsel is required only to advise the client that the criminal charges may carry a risk of adverse immigration consequences." Syllabus point 4, *State v. Hutton*, 235 W. Va. 724, 776 S.E.2d 621 (2015).

2. "A claim of legal error may be brought in a petition for a writ of error coram nobis only in extraordinary circumstances and if the petitioner shows that (1) a more usual remedy is not available; (2) valid reasons exist for not attacking the conviction earlier; (3) there exists a substantial adverse consequence from the conviction; and (4) the error presents a denial of a fundamental constitutional right." Syllabus point 5, *State v. Hutton*, 235 W. Va. 724, 776 S.E.2d 621 (2015).

3. "In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984): (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that,

i

but for counsel's unprofessional errors, the result of the proceedings would have been different." Syllabus point 5, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995).

**Davis, Justice:**

Petitioner, Orville M. Hutton ("Mr. Hutton"), appeals from an order of the Circuit Court of Harrison County that denied him relief in his petition for a writ of error coram nobis. In this appeal, Mr. Hutton contends that he satisfied the four-part test for coram nobis relief.[1] After carefully reviewing the briefs, the arguments of the parties, the legal authority cited, and the record presented for consideration, we reverse and remand for further proceedings consistent with this opinion.

## I.

## FACTUAL AND PROCEDURAL HISTORY

In 2010, a Harrison County grand jury indicted Mr. Hutton for malicious assault[2] and three counts of sexual assault in the second degree.[3] The victim of the crimes was Mr. Hutton's girlfriend, who also was the mother of their four-year-old son. In May of 2010, shortly after the indictment, Mr. Hutton entered a *Kennedy* plea of guilty to the felony crime of unlawful assault, in exchange for the charges set out in the indictment being

---

[1]The test is set out *infra* in the Discussion Section of this opinion.

[2]The punishment for malicious assault under the statute in effect at the time of Mr. Hutton's indictment was not less than two nor more than ten years imprisonment. *See* W. Va. Code § 61-2-9(a) (2004) (Repl. Vol. 2010). *Accord* W. Va. Code § 61-2-9 (a) (2017) (Supp. 2017).

[3]The punishment for each sexual assault count was not less than ten nor more than twenty-five years imprisonment. *See* W. Va. Code § 61-8B-4(b) (1991) (Repl. Vol. 2014).

dropped.[4]  In July of 2010, Mr. Hutton was sentenced to a term of one to five years.  At some point, Mr. Hutton was released on parole.  However, his parole was revoked, and he was required to serve the full term of his sentence.

On May 15, 2013, a few days before Mr. Hutton was set to be released from prison, he was notified by the Department of Homeland Security that, as a result of his felony conviction, he would be held by the federal government under a detainer and processed for deportation to the place of his birth, Jamaica.[5]  Upon being discharged from his State sentence, on May 25, 2013, Mr. Hutton was turned over to the federal government for deportation proceedings.  During the pendency of the deportation proceedings, Mr. Hutton filed a petition for writ of error coram nobis with the circuit court.  Mr. Hutton alleged in the petition that he received ineffective assistance of counsel because his trial counsel failed to inform him that his guilty plea to the felony crime of unlawful assault would result in his

---

[4]Under a *Kennedy* plea, a defendant enters a guilty plea without admitting guilt. *See* Syl. pt. 1, *Kennedy v. Frazier*, 178 W. Va. 10, 357 S.E.2d 43 (1987) ("An accused may voluntarily, knowingly and understandingly consent to the imposition of a prison sentence even though he is unwilling to admit participation in the crime, if he intelligently concludes that his interests require a guilty plea and the record supports the conclusion that a jury could convict him.").  *See also North Carolina v. Alford*, 400 U.S. 25, 38, 91 S. Ct. 160, 168, 27 L. Ed. 2d 162 (1970) ("In view of the strong factual basis for the plea demonstrated by the State and Alford's clearly expressed desire to enter it despite his professed belief in his innocence, we hold that the trial judge did not commit constitutional error in accepting it.").

[5]Under the federal Immigration and Nationality Act, 8 U.S.C. § 1227(a)(2)(A)(iii) (2008) (2012 ed.), "[a]n alien who has been convicted of an 'aggravated felony' . . . is removable from the United States." *Rodriguez-Contreras v. Sessions*, No. 17-1335, 2017 WL 4546112, at *1 (7th Cir. Oct. 12, 2017).

2

being deported from the United States. By order entered April 28, 2014, the circuit court denied relief to Mr. Hutton on the ground that the writ of error coram nobis was abolished in West Virginia. Mr. Hutton appealed that ruling. In the appeal to this Court, we reversed the circuit court's order and held in Syllabus point 3 of *State v. Hutton*, 235 W. Va. 724, 776 S.E.2d 621 (2015) ("Hutton I"), that "[i]n West Virginia, the common law writ of error coram nobis is available only in criminal proceedings." The case was remanded for the circuit court to hold a hearing on the merits of Mr. Hutton's petition.

On December 16, 2015, the circuit court held an evidentiary hearing on Mr. Hutton's petition. Testimony was taken from four witnesses at the hearing: Mr. Hutton,[6] Thomas G. Dyer,[7] A. Courtenay Craig,[8] and Michael Blumenthal.[9] At the conclusion of the hearing, the circuit court entered an order on October 18, 2016, that denied relief to Mr. Hutton. This appeal followed.

---

[6]Mr. Hutton testified via video conferencing.

[7]Mr. Dyer was the attorney who represented Mr. Hutton when he entered his plea of guilty to unlawful assault.

[8]Mr. Craig represented Mr. Hutton for post-trial motions after he entered his plea of guilty to unlawful assault.

[9]Mr. Blumenthal was one of the attorneys who represented Mr. Hutton during the appeal in *Hutton I*. Mr. Blumenthal testified via telephone.

3

## II.

## STANDARD OF REVIEW

In this proceeding, the circuit court entered an order denying Mr. Hutton coram nobis relief. In our consideration of that order, we apply the following standard of review:

> We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

Syl. pt. 2, in part, *Walker v. West Virginia Ethics Comm'n*, 201 W. Va. 108, 492 S.E.2d 167 (1997). *Accord State v. Murray*, 235 W. Va. 312, 319, 773 S.E.2d 656, 663 (2015).

## III.

## DISCUSSION

In order to understand the posture of the issues presented in this appeal, a review of a few legal principles set out in our opinion in *Hutton I* is required. To begin, in the decision in *Hutton I* we recognized that the opinion by the United States Supreme Court in *Padilla v. Kentucky*, 559 U.S. 356, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010), required attorneys to advise immigrant criminal defendants of the deportation consequences of a guilty plea. We addressed the issue in Syllabus point 4 of *Hutton I* as follows:

> Under *Padilla v. Kentucky*, 559 U.S. 356, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010), the Sixth Amendment requires defense counsel to warn an immigrant client of the deportation consequences of a guilty plea. When the deportation consequence is succinct, clear, and explicit under the applicable

4

> law, counsel must provide correct advice to the client. When the law is not succinct or straightforward, counsel is required only to advise the client that the criminal charges may carry a risk of adverse immigration consequences.

235 W. Va. 724, 776 S.E.2d 621. In order to obtain relief for a *Padilla* violation a defendant must show prejudice. *See Padilla*, 559 U.S. at 374, 130 S. Ct. at 1487, 176 L. Ed. 2d. 284 ("Whether Padilla is entitled to relief will depend on whether he can demonstrate prejudice as a result thereof, a question we do not reach because it was not passed on below."). In light of *Padilla,* we adopted a test in *Hutton I* for a determination of whether a defendant in a coram nobis proceeding may have a plea set aside as a result of a *Padilla* violation. The test was set out in syllabus point 5 of *Hutton I* as follows:

> A claim of legal error may be brought in a petition for a writ of error coram nobis only in extraordinary circumstances and if the petitioner shows that (1) a more usual remedy is not available; (2) valid reasons exist for not attacking the conviction earlier; (3) there exists a substantial adverse consequence from the conviction; and (4) the error presents a denial of a fundamental constitutional right.

It has been recognized that "[f]ailure to establish any of the above elements will defeat a petition for coram nobis relief." *Borelli v. United States*, No. 17-2814 (JLL), 2017 WL 4074027, at *2 (D.N.J. Sept. 14, 2017).

We remanded the case in *Hutton I* so that the circuit court could afford Mr. Hutton an opportunity to present evidence on each of the four elements of the above test. At the conclusion of the hearing on the matter, the circuit court denied relief after determining

5

that Mr. Hutton's evidence satisfied only the third element of the four-part test.[10]  In this

appeal, the State has conceded that Mr. Hutton also satisfied the first element of the test.[11]

*See Bereano v. United States*, 706 F.3d 568, 576 (4th Cir. 2013) ("The Government does not

contest the proposition that Bereano has satisfied the first three of the foregoing prerequisites

for coram nobis relief."); *United States v. Verrusio*, No. 09-cr-00064 (BAH), 2017 WL

1437055, at *8 (D.D.C. Apr. 21, 2017) ("The government also does not quarrel with the

defendant's claim that the first and second factors have been met.  Instead, the government

argues that the defendant cannot satisfy the third or the fourth factor.").  As a general rule,

we are not obligated to accept the State's concession of error by the circuit court on an issue.

*See* Syl. pt. 8, in part, *State v. Julius*, 185 W. Va. 422, 408 S.E.2d 1 (1991) ("This Court is

not obligated to accept the State's confession of error in a criminal case.").  However, the

record shows quite clearly that Mr. Hutton established the first element of the test by showing

that a more usual remedy was not available.  Consequently, we summarily reject the circuit

court's finding on this issue.[12]  We will confine our analysis to the second and fourth

---

[10]The circuit court's order concluded that "[a]dverse consequences may presently exist for [Mr. Hutton] as a result of his deportation[.]"

[11]The State indirectly conceded the issue by failing to brief the matter.

[12]The circuit court determined that Mr. Hutton had a federal remedy through an appeal of the deportation order.  The record does not support such a finding.  The State's brief correctly pointed out that "[t]o the extent Mr. Hutton seeks to have his conviction vacated and not merely to avoid the deportation consequences of his conviction, his federal appeal does not provide a more usual remedy."  *See Drakes v. I.N.S.*, 330 F.3d 600, 603 (3d Cir. 2003) (holding "that a petitioner could not challenge [in federal court] his underlying
(continued...)

6

elements of the *Hutton I* test:  valid reasons exist for not attacking the conviction earlier and the error presents a denial of a fundamental constitutional right.  We will address each issue separately.

### A.  A Valid Reason Exists for Not Attacking the Conviction Earlier

Mr. Hutton argues that the circuit court erred in finding that no valid reason existed for his failure to challenge the unlawful assault conviction earlier in a habeas corpus proceeding.  In this appeal, the State also has argued that "Mr. Hutton failed to exercise reasonable diligence in asserting his claim."

As previously mentioned, the decision in *Hutton I* required Mr. Hutton show that a valid reason existed for not attacking his conviction earlier.  The opinion in *Colon v. United States*, No: 1:12-cr-204 (JCC), 2016 WL 7210350 (E.D. Va. Dec. 12, 2016) illustrates the meaning of attacking a conviction earlier.  The defendant in *Colon* was an immigrant who pled guilty to a drug charge in federal court.  After the defendant served her prison sentence, she was turned over to immigration officials for deportation.  The defendant thereafter filed a petition for a writ of coram nobis on the grounds that her counsel failed to inform her of

---

[12](...continued)
[state] conviction even though it was the basis for the BIA's order of deportation.").  In fact, the record shows that Mr. Hutton's appeal of the deportation order has been stayed pending the outcome of this proceeding.

7

the deportation consequences of the guilty plea. The district court rejected the petition. In doing so, the court addressed the issue of attacking the conviction timely as follows:

> In its opposition, the Government concedes that Colon's plea agreement, as well as the plea hearing, did not include a discussion of immigration consequences that might result from Colon's guilty plea. . . . The Government argues, however, that at least by the time Colon was sentenced – on August 24, 2012 – she had been informed that her conviction would result in a deportation review. . . . In fact, the Judgment entered on that date included the special conditions that Colon be surrendered to ICE for deportation review and that, if deported, Colon remain outside the United States. . . . Precisely due to this evidence of Colon's knowledge of the risk of deportation, the Government claims that she has provided no justification for waiting to attack her conviction in the intervening three years and seven months. . . .
>
> Colon's reply to the Government's opposition argues that she was unable to attack her conviction earlier because she was unaware that her conviction would result in "an automatic mandatory deportation." . . . . She asserts that she first realized that she would be deported on December 16, 2015. . . . Before that time, she thought that the language in her special conditions meant only that "[deportation] may or may not happen." . . . In other words, Colon appears to be claiming that she had no reason to attack her conviction before April 2016.
>
> Unfortunately, Colon's relative uncertainty about the possibility of deportation, and her possible hope that she would not be deported at all, do not provide a legitimate justification for her delay. Colon has failed to establish a valid reason for not attacking her conviction earlier. Thus, the Court will deny her motion.

*Colon*, 2016 WL 7210350, at *2. *See also Eastwood v. United States*, No. 3-16-cv-00536-JAG, 2017 WL 462635, at *3 (E.D. Va. February 3, 2017) ("She claims that she could not

8

bring this attack earlier because she 'was unaware of the near-mandatory effect of her plea until deportation proceedings were initiated against her.' This completely ignores the fact that the presiding judge at sentencing required Eastwood to surrender to immigration officials after she completed her term of imprisonment. Thus, no valid reason exists why Eastwood did not challenge her conviction earlier, rendering relief through writ of error coram nobis unavailable."); *Kokoski v. United States*, No. 5:12-2150, 2013 WL 1337408, at *7 (S.D.W. Va. Mar. 29, 2013) ("While the test above does not present a set time limit for filing coram nobis petitions . . . , it would be unfair to allow Petitioner to seek coram nobis relief at this time when such relief could have been pursued years ago.").

The decision in *United States v. Akinsade*, 686 F.3d 248 (4th Cir. 2012), illustrates a timely attack of a conviction.[13] The defendant in *Akinsade* was born in Nigeria and came to the United States in 1988, at the age of seven. In 2000, the federal government charged the defendant with embezzlement from a bank. During plea bargaining negotiations, the defendant's attorney informed him twice that he could not be deported based on a single offense. The defendant was told that he could be deported only if he had two felony convictions. Relying on this legal advice, the defendant pled guilty. Prior to accepting the plea, the district judge warned the defendant that if he was not a citizen he could be deported.

---

[13]The decision in *United States v. Akinsade* is more fully discussed in *Hutton I.*

9

After accepting the plea, the district court sentenced the defendant to one month of imprisonment, and a three-year term of supervised release. Approximately nine years after the defendant was convicted and sentenced, he was arrested by immigration authorities and charged with deportation as an aggravated felon based upon the embezzlement conviction. The defendant filed a coram nobis petition in federal court, alleging a violation of his Sixth Amendment right to effective assistance of counsel because of the wrong advice given to him by his trial counsel. The district court rejected the argument on the ground that the defendant was not prejudiced, because the trial judge had warned him of the potential for deportation during the plea hearing. The Fourth Circuit disagreed and vacated the defendant's plea. In doing so, the opinion addressed the timeliness of the coram nobis attack on the conviction as follows:

> Second, valid reasons exist for Akinsade not attacking the conviction earlier. Until physically detained by immigration authorities in 2009, Akinsade had no reason to challenge the conviction as his attorney's advice, up to that point in time, appeared accurate. . . .
>
>    . . . .
>
>    . . . [T]he district court warned that Akinsade's plea *could* lead to deportation. This general and equivocal admonishment is insufficient to correct counsel's affirmative misadvice that Akinsade's crime was not categorically a deportable offense. More importantly, the admonishment did not "properly inform" Akinsade of the consequence he faced by pleading guilty: mandatory deportation. Thus, Akinsade could not have known that deportation was a legally mandated consequence of his plea.

*Akinsade*, 686 F.3d at 252-54.

10

The decisions in *Colon* and *Akinsade* help illustrate that attacking a conviction for a *Padilla* violation is not foreclosed because of a failure to timely attack a conviction on some other basis. That is, for purposes of asserting a *Padilla* claim in a coram nobis proceeding, the issue of timely attacking the conviction is limited to showing a timely assertion of the *Padilla* immigration violation.

In the instant proceeding, the State contends that Mr. Hutton could have attacked his conviction in a habeas corpus proceeding long before he filed the *Padilla* coram nobis petition.[14] The State relies upon evidence presented below that Mr. Hutton's attorney for post-trial motions, A. Courtenay Craig, had advised him that he may have had a claim for ineffective assistance of counsel against his trial lawyer. The State's reliance on a habeas attack is meritless because of the reason given by Mr. Craig when he informed Mr. Hutton of the potential for an ineffective assistance of counsel claim. Mr. Craig testified that he believed Mr. Hutton's trial counsel did not adequately prepare for trial and that, as a result of this inadequacy, he might have a claim for ineffective assistance of counsel. Mr. Craig testified to this issue during direct examination by counsel for Mr. Hutton:

> Q. –you didn't realize he had immigration consequences through IRAIRA, and you didn't realize he had a defense and a claim of ineffective assistance of counsel based on *Padilla*, do you feel that you were, in fact, ineffective by failing to bring that to his attention at that point?

---

[14]The circuit court also made this determination.

11

A. Okay. I can say this, at the time that I became aware of *Padilla* and this terminated, he'd already pled. It doesn't change his situation one way or another because I told him I think you have an ineffective assistance of counsel claim, but we need to hold on to that because--

Q. And that was based on the failure to properly prepare for trial, that wasn't even based on *Padilla* was it?

A. Right, exactly. I had that discussion with him about a habeas corpus down the way, but also discussed at length I was doing it the way I was doing it, because that's what I–

. . . .

Q. But the fact that you didn't know the consequences, you didn't know that *Padilla* existed, and you didn't tell him that he had that ineffective assistance claim based on *Padilla*, do you now, in retrospect, look at that and say, well, that was probably ineffective assistance?

A. If you put it like that, I guess so.

It is clear from the above testimony that Mr. Craig did not inform Mr. Hutton that he had a habeas claim based upon a *Padilla* violation. In fact, Mr. Craig did not know about *Padilla* when he represented Mr. Hutton. The fact that Mr. Hutton was informed that he may have had an ineffective assistance of counsel claim based on his trial attorney's failure to adequately prepare for trial is irrelevant for purposes of timely asserting a *Padilla* claim. As illustrated in *Colon* and *Akinsade*, the point at which a defendant has knowledge of a *Padilla* claim determines whether the related attack of a conviction was timely made. In this case, the record shows that Mr. Hutton learned that he would be deported when he

12

was served with a deportation warrant on May 23, 2013. Mr. Hutton testified below that it was after he was served with deportation papers that he first learned about a *Padilla* claim. Mr. Hutton indicated that he learned of a *Padilla* claim from another inmate who also was facing deportation. Thereafter, on September 4, 2013, Mr. Hutton filed this petition for a writ of coram nobis asserting a *Padilla* violation. Under these facts, it is clear that a valid reason existed for Mr. Hutton's failure to attack his conviction for a *Padilla* violation prior to 2013, *i.e.*, he was never aware of his rights under *Padilla* until an inmate told him in 2013. Consequently, we find the circuit court erred in finding Mr. Hutton did not have a valid reason for failing to assert his *Padilla* claim earlier.

### B.  The Error Presents a Denial of a Fundamental Constitutional Right

Under the fourth element of the *Hutton I* test, we must determine whether the failure of Mr. Hutton's trial counsel to inform him of the deportation consequences of his guilty plea denied him a fundamental constitutional right. Mr. Hutton argues that his Sixth Amendment right to effective assistance of counsel was violated as a result of his trial counsel's failure to inform him that he would be deported if he pled guilty to the felony offense of unlawful assault. The State argues, and the circuit court concluded, that no Sixth Amendment violation occurred. We disagree.

In determining whether a criminal defendant received ineffective assistance of counsel, we apply the following test:

> In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984): (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.

Syl. pt. 5, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995).

The first prong of the *Strickland* test, deficient performance, can be disposed of summarily. As we have previously mentioned, under *Padilla* the Sixth Amendment requires defense counsel to warn an immigrant client of the deportation consequences of a guilty plea. The State asserts, and the circuit court so found, that defense counsel made "a reasonable investigation of Mr Hutton's immigration status and reasonably concluded that he should not worry about Mr. Hutton's immigration status." The record does not support this conclusion. The vague and inconsistent testimony of defense counsel reveals that he made no immigration investigation. *See* Lindsay C. Nash, *Considering the Scope of Advisal Duties Under Padilla*, 33 Cardozo L. Rev. 549, 576 (2011) ("[D]efense attorneys must investigate and research the law using available resources and then advise noncitizen defendants about immigration consequences at the level of specificity that research permits."). Assuming, for the sake of argument, that such an investigation was made, *Padilla*

14

required defense counsel to inform Mr. Hutton that, if he was an immigrant, his guilty plea would subject him to deportation. This was not done.[15] Consequently, Mr. Hutton's trial counsel's performance was deficient. *See United States v. Swaby*, 855 F.3d 233, 240 (4th Cir. 2017) ("Counsel's failure to advise a client about 'succinct, clear, and explicit' immigration consequences for a conviction is constitutionally deficient performance under the Sixth Amendment."); *Commonwealth v. Lavrinenko*, 38 N.E.3d 278, 290 (Mass. 2015) ("[T]he failure of a criminal defense attorney to make a reasonable inquiry of the client regarding his or her citizenship and immigration status is sufficient to satisfy the deficient performance prong of the ineffective assistance analysis."); *State v. Favela*, 343 P.3d 178, 182 (N.M. 2015) ("A defense attorney's failure to advise a client of the specific immigration consequences of pleading guilty, including whether deportation would be virtually certain[,] renders that attorney's performance deficient, which satisfies the first prong of the Strickland test.").

Under the second prong of the *Strickland* test, Mr. Hutton has to show that he was prejudiced by his trial counsel's deficient performance. That is, "in order to satisfy the

---

[15]During the examination of trial counsel at the hearing he stated the following: "But, you know, there were no–I didn't–in fairness to Mr. Hutton, when it came to this plea I didn't sit down and say, listen, let's make sure this is not going to have an effect on your citizenship or immigration status. I did not do that." See *Diaz v. State*, 896 N.W.2d 723, 732 (Iowa 2017) ("Certainly, any person contemplating a plea of guilty to a crime that could lead to deportation would want to know the full meaning and consequences of deportation.").

'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S. Ct. 366, 370, 88 L. Ed. 2d 203 (1985). Under the prejudice prong of *Strickland*, "[t]he potential strength of the state's case must inform our analysis, inasmuch as a reasonable defendant would surely take it into account." *Ostrander v. Green*, 46 F.3d 347, 356 (4th Cir. 1995), *overruled on other grounds by*, *O'Dell v Netherland*, 95 F.3d 1214 (4th Cir. 1996) (en banc). However, *Padilla* does not require a showing that Mr. Hutton would have prevailed if the case went to trial. *Padilla* made clear that, "to obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla*, 559 U.S. at 372, 130 S. Ct. at 1485. This issue was succinctly articulated in *Swaby*, 855 F.3d at 243-44:

> [T]he prejudice prong does not require a defendant to show that going to trial would have been the best objective strategy or even an attractive option. It merely requires the defendant to show a reasonable likelihood that a person in the defendant's shoes would have chosen to go to trial. The decision does not need to be optimal and does not need to ensure acquittal; it only needs to be rational.

The decision in *Akinsade*, *supra*, helps illustrate a showing of prejudice. As previously noted, the defendant in *Akinsade* pled guilty to a charge of embezzlement. This conviction was a deportable offense because the amount of money involved exceeded

16

$10,000. In evaluating the defendant's claim of prejudice due to a *Padilla* violation, the

Fourth Circuit ruled as follows:

> Akinsade pleaded guilty to a deportable offense that involve[d] fraud or deceit in which the loss to the victim or victims exceed[ed] $10,000. . . . Before the district court, Akinsade's counsel asserted that if Akinsade had gone to trial, he would have argued that the amount of loss was $8,000. His counsel noted that Akinsade was ordered to pay restitution in the amount of $8,000, which he had paid in full, and further that Akinsade would have disputed his involvement with a third check that placed him over the $10,000 amount. Consequently, the choice to go to trial is rational and we cannot conclude that a reasonable defendant in [Akinsade's] shoes, having asked for, received, and relied upon encouraging advice' about the risks of deportation, would have pled guilty anyway had he known that his attorney was mistaken. . . . Thus, we find that counsel's affirmative misrepresentations that the crime at issue was non-deportable prejudiced Akinsade. Akinsade has met his burden under prong two of *Strickland*. In doing so, he has also demonstrated that he has suffered a fundamental error necessitating coram nobis relief. . . .

*Akinsade*, 686 F.3d at 256 (internal quotations and citations omitted). What is clear from the

discussion in *Akinsade* is that a focus on the strength of the government's case is not

controlling.

In the instant proceeding, the State argues that it had a strong case against Mr.

Sutton for all four charges: malicious assault and three counts of sexual assault in the second

degree. The State's evidence included testimony by the victim alleging that Mr. Hutton beat

her and that several days after the beating he sexually assaulted her. The State also was

17

prepared to introduce medical records to corroborate the beating, as well as testimony by persons who allegedly saw the victim after the physical assault. Further, the State alleged that it had a statement made by Mr. Hutton admitting to some of the allegations of beating the victim.

Mr. Hutton presented testimony that he would have gone to trial if he had known that his guilty plea would result in his deportation. Mr. Hutton contended that he would challenge the severity of the physical assault, because the medical records showed only "injuries that are in all cases self-reported pain with no visible injuries[.]" There also was evidence below that Mr. Hutton was prepared to introduce "impeachment evidence regarding telephone calls from the alleged victim's phone, and admissions under oath by the alleged victim of meretricious sex with [him]." The record in this case also indicated that Mr. Hutton entered a *Kennedy* plea of guilty, wherein he protested that he was actually innocent. The evidence also shows that Mr. Hutton was born in Jamaica, in 1962, and was brought to the United States at about the age of nine years old. He has never returned to Jamaica since immigrating to this country as a child. Mr. Hutton's immediate family, including his son,[16] mother, and siblings live in the United States.[17] We believe that under

---

[16]As previously indicated, the mother of Mr. Hutton's son is the alleged victim in the case.

[17]The record indicates that Mr. Hutton's father immigrated to the United States, but died in 2004.

18

the facts of this case, if Mr. Hutton's trial counsel had informed him that he would be deported if he pled guilty, a rejection of the plea bargain would have been rational under the circumstances. *See Diaz v. State*, 896 N.W.2d 723, 734 (Iowa 2017) ("We conclude Morales Diaz would not have accepted this plea agreement if he had been provided the effective assistance of counsel to which he was entitled under the Sixth Amendment to the U.S. Constitution."); *Matter of Petition of Isidro-Soto*, No. 46673-2-II, 2017 WL 1907740, at 5* (Wash. Ct. App. May 9, 2017) ("While Isidro–Soto would have faced a longer sentence had he lost at trial, deportation is also a particularly severe penalty. Consequently, it would have been rational for Isidro–Soto to take his chances at trial. Accordingly, Isidro–Soto shows that there is a reasonable probability that, but for defense counsel's failure to advise, he would not have pleaded guilty and would have insisted on going to trial.").

Our conclusion in this matter is supported by the recent decision of the United States Supreme Court in *Lee v. United States*, ___ U.S. ___, 137 S. Ct. 1958, 198 L. Ed. 2d 476 (2017). The defendant in *Lee* was arrested in 2009 by the federal government and charged with possession of drugs with intent to sell. The defendant eventually pled guilty to the charge with the understanding that he would receive a lighter sentence by avoiding a jury trial. Prior to entering the plea, the defendant was assured by his attorney that he would

19

not face deportation proceedings by pleading guilty.[18]  Subsequent to being sentenced, the

defendant learned that he would be deported as a result of his conviction.  The defendant

thereafter filed a motion to set aside the plea on the ground of ineffective assistance of

counsel.  The district court found that trial counsel's performance was deficient under

*Strickland*, but that because the government's case was strong, the defendant failed to satisfy

the prejudice prong of *Strickland*.  The court of appeals agreed with the decision of the

district court.  The Supreme Court granted certiorari and reversed.  The Supreme Court found

in *Lee* that the defendant satisfied the prejudice prong of *Strickland* as follows:

> Here Lee knew, correctly, that his prospects of acquittal at trial were grim, and his attorney's error had nothing to do with that. The error was instead one that affected Lee's understanding of the consequences of pleading guilty. . . .
>
> Lee . . . argues he can establish prejudice . . . because he never would have accepted a guilty plea had he known that he would be deported as a result.  Lee insists he would have gambled on trial, risking more jail time for whatever small chance there might be of an acquittal that would let him remain in the United States.  The Government responds that, since Lee had no viable defense at trial, he would almost certainly have lost and found himself still subject to deportation, with a lengthier prison sentence to boot.  Lee, the Government contends, cannot show prejudice from accepting a plea where his only hope at trial was that something unexpected and unpredictable might occur that would lead to an acquittal.
>
> . . . .

---

[18]The defendant was born in South Korea and was brought to this country by his parents at the age of thirteen, in 1982.

But common sense (not to mention our precedent) recognizes that there is more to consider than simply the likelihood of success at trial. The decision whether to plead guilty also involves assessing the respective consequences of a conviction after trial and by plea. . . . When those consequences are, from the defendant's perspective, similarly dire, even the smallest chance of success at trial may look attractive. . . . Here Lee alleges that avoiding deportation was *the* determinative factor for him; deportation after some time in prison was not meaningfully different from deportation after somewhat less time. He says he accordingly would have rejected any plea leading to deportation—even if it shaved off prison time—in favor of throwing a "Hail Mary" at trial.

. . . .

There is no reason to doubt the paramount importance Lee placed on avoiding deportation. Deportation is always a particularly severe penalty, . . . and we have recognized that preserving the client's right to remain in the United States may be more important to the client than any potential jail sentence. . . . At the time of his plea, Lee had lived in the United States for nearly three decades, had established two businesses in Tennessee, and was the only family member in the United States who could care for his elderly parents—both naturalized American citizens. In contrast to these strong connections to the United States, there is no indication that he had any ties to South Korea; he had never returned there since leaving as a child.

. . . .

Lee's claim that he would not have accepted a plea had he known it would lead to deportation is backed by substantial and uncontroverted evidence. Accordingly we conclude Lee has demonstrated a reasonable probability that, but for [his] counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. . . .

21

*Lee*, 137 S. Ct. at 1965-69 (internal quotations, citations, and footnotes omitted). *See also Tzen v. United States*, No. 16-0734-DRH, 2017 WL 4233077, at \*4 (S.D. Ill. Sept. 22, 2017) ("Based on the record and the circumstances of this case, the Court finds that Tzen did not make a rational decision to plead guilty and that counsels were ineffective pursuant to *Lee* and the Sixth Amendment.").

In light of the evidence in the instant case and the guidance of *Lee*, we reverse the circuit court's order and grant Mr. Hutton coram nobis relief. On remand Mr. Hutton will be allowed to withdraw his guilty plea and stand trial for the offenses for which he was indicted. *See Grooms v. United States*, No. 3:09-1174-CMC, 2013 WL 5771180, at \*4 (D.S.C. Oct. 23, 2013) ("where the plea was accepted due to ineffective assistance of counsel, the proper remedy is to vacate the conviction (that is, allow petitioner to withdraw his plea).").

## IV.

## CONCLUSION

For the foregoing reasons, the circuit court's order denying Mr. Hutton coram nobis relief is reversed, and this case is remanded for further proceedings consistent with this opinion.

Reversed and Remanded.