# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

Wade Painter,
**Petitioner Below, Petitioner**

**vs.) No. 17-1010** (Berkeley County 9-C-573)

**Donnie Ames, Superintendent,**
**Mt. Olive Correctional Complex,**
**Respondent Below, Respondent**

**FILED**

**June 12, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Wade Painter, by counsel Ben J. Crawley-Woods, appeals the Circuit Court of Berkeley County's October 16, 2017, order denying his petition for a writ of habeas corpus.[1] Donnie Ames, Superintendent, Mt. Olive Correctional Complex, by counsel Scott E. Johnson, filed a response in support of the circuit court's order.[2] On appeal, petitioner argues that the circuit court erred in denying him habeas relief because he received ineffective assistance of counsel.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Police began investigating the events that gave rise to petitioner's underlying criminal convictions in September of 2005 following the shooting deaths of Raymond White Jr. and his son, Raymond White IV. *Painter v. Ballard*, No. 15-0540, 2016 WL 3349168, at *1 (W. Va. June 15, 2016)(memorandum decision). Investigators determined that personal property had been

---

[1]Additionally, by order entered on May 7, 2018, this Court granted petitioner's "motion for leave to file a pro se supplement."

[2]Effective July 1, 2018, the positions formerly designated as "wardens" are now designated "superintendents." *See* W. Va. Code § 15A-5-3. Further, petitioner originally listed Ralph Terry as respondent in this matter. However, Donnie Ames has subsequently taken the position of superintendent at Mt. Olive Correctional Complex, and the appropriate public officer has been substituted in accordance with Rule 41 of the Rules of Appellate Procedure.

stolen from the Whites' home, in addition to two other homes in the area. *Id*. One of the items missing from the Whites' home was a Mazda MX-6, which police located on September 15, 2005, abandoned behind a garage. *Id*. That same day, an individual contacted law enforcement "and informed them that he witnessed the tenant of one of his rental properties in possession of a car matching the description of the stolen Mazda MX-6." *Id*. The caller identified his tenant as petitioner on appeal and indicated that petitioner lived with his girlfriend, Angela Conner. *Id*. After receiving this information, law enforcement responded to petitioner's residence to question him about the vehicle. *Id*. Because petitioner refused the officers' entry into the home, they spoke outside the residence with petitioner ultimately agreeing to "accompan[y] the officers in their unmarked vehicle to the police station to answer further questions." *Id*.

Following petitioner's departure, Ms. Conner, through her father, communicated to law enforcement that she would permit a search of the shared residence because "her home was full of property she did not believe belonged to Mr. Painter." *Id.* at *2. Law enforcement again responded to the home, Ms. Conner granted permission to enter, and law enforcement gathered and cataloged the property Ms. Conner identified. *Id*. "The entry of the residence was premised on Ms. Conner's permission; no search warrant was ever obtained to search the residence." *Id.* Upon entry, "the officers found a red duffle bag with items appearing to have blood on them and a dog tag bearing the name of one of the Whites." *Id*. As a result of the search, petitioner was placed under arrest. *Id*.

Thereafter, petitioner was indicted on one count of daytime burglary by entering without breaking, one count of grand larceny, one count of daytime burglary by breaking and entering, one count of petit larceny, two counts of first-degree murder, and one count of possession of a stolen vehicle. Petitioner was convicted on all counts following a jury trial. Following the denial of his post-trial motions, petitioner was sentenced to the following terms of incarceration: one to ten years for daytime burglary by entering without breaking; one to ten years for grand larceny; one to fifteen years for daytime burglary by breaking and entering; one year for petit larceny; one to five years for possession of a stolen vehicle; and two life sentences, without mercy, for the first-degree murder convictions. All sentences were ordered to be served consecutively. Petitioner appealed his convictions to this Court, and we refused the appeal by order entered on February 3, 2009.

In June of 2009, petitioner filed a petition for writ of habeas corpus and was appointed counsel the following month. After multiple extensions, motions to withdraw as counsel, and appointments of new attorneys, petitioner ultimately filed an amended habeas petition on May 23, 2014. In December of 2014, the circuit court summarily dismissed all but one of the claims raised in petitioner's habeas petition. In May of 2015, after ordering respondent to file a response to petitioner's remaining claim of ineffective assistance of counsel, the circuit court entered a second order summarily denying the petition. Both orders denying petitioner's claims were entered without an evidentiary hearing. Petitioner then appealed the orders denying his habeas petition to this Court. In a decision issued on June 15, 2016, the Court affirmed, in part, and reversed, in part, the circuit court's rulings. The matter was ultimately remanded for the circuit court to hold an omnibus evidentiary hearing addressing petitioner's ineffective assistance claim. *Id* at *5.

Upon remand, the circuit court held an omnibus hearing in August of 2017. Prior to the hearing, petitioner moved to retain an expert witness regarding whether his counsel's performance fell below an objective standard of reasonableness. The circuit court denied this motion. Petitioner's trial and appellate counsel, B. Craig Manford and S. Andrew Arnold, testified during the hearing, as did petitioner. According to the circuit court, "[b]ecause the events underlying the amended [p]etition occurred approximately ten years ago, all witnesses had difficulty recalling the events at issue." Following the hearing, the circuit court again denied the petition. This appeal followed.

Our review of the circuit court's order denying petitioner's petition for a writ of habeas corpus is governed by the following standard:

> "In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review." Syllabus point 1, *Mathena v. Haines,* 219 W.Va. 417, 633 S.E.2d 771 (2006).

Syl. Pt. 1, *State ex rel. Franklin v. McBride*, 226 W. Va. 375, 701 S.E.2d 97 (2009). Further,

> "[i]n the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Syl. Pt. 5, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995).

Syl. Pt. 2, *Raines v. Ballard*, 236 W. Va. 588, 782 S.E.2d 775 (2016). Importantly, hindsight is not to be applied to the objective standard:

> "In reviewing counsel's performance, courts must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. Thus, a reviewing court asks whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue." Syl. Pt. 6, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995).

*Raines*, 236 W. Va. at 589, 782 S.E.2d at 776, syl. pt. 3.

In his first assignment of error, petitioner alleges that his trial attorneys' performances were objectively deficient because they failed to undertake an investigation into the charges against petitioner, especially in light of the fact that "discovery . . . indicated that there were third[]parties who may have been responsible for the crimes."[3] According to petitioner, "the presumption [that counsel's conduct falls within the wide range of reasonable professional assistance] is simply inappropriate if counsel's strategic decisions are made after an inadequate investigation." Syl. Pt. 3, in part, *State ex rel. Daniel v. Legursky*, 195 W. Va. 314, 465 S.E.2d 416 (1995). Upon our review, however, we find that petitioner is entitled to no relief in this regard.

In support of this assignment of error, petitioner relies heavily on the facts of *Ballard v. Ferguson*, 232 W. Va. 196, 751 S.E.2d 716 (2013), to argue that trial counsel failed to investigate the charges against him. We note, however, that the facts of *Ferguson* differ substantially from those presented in the matter on appeal. Importantly, the evidence in *Ferguson* established that an individual confessed to at least two other people that he, not the defendant, murdered the victim in that case, and that one of the individuals to whom the confession was made relayed that information to the police prior to trial. *Id*. at 199, 751 S.E.2d at 719. Moreover, although counsel in that case learned of the witness's statement through discovery, "[t]here was also evidence that trial counsel failed to do an independent investigation" into the statement. *Id*. In affirming the circuit court's award of habeas relief upon counsel's failure to investigate the matter, this Court found that the "compelling testimony" of two of the people to whom the third party's confession was made "was unjustifiably kept from the jury because of [counsel's] ineffectiveness." *Id*. at 208, 751 S.E.2d at 728. We further found that these facts "conclusively demonstrate[] that the adversarial process . . . was undermined [because t]he best evidence [defendant] had to defend his claim of innocence at trial was suppressed through [counsel's] constitutionally deficient performance." *Id*. Such a factual scenario is simply not present in the matter on appeal.

Importantly, no third party confessed to the crimes of which petitioner was convicted. Instead, petitioner cites to testimony from Walter Johnson III, who testified at petitioner's criminal trial that, on September 14, 2005, he gave a ride to Mike Barrett. According to Mr. Johnson, Mr. Barrett "had a lot of scratches and quite a knot on the head." Per Mr. Johnson's testimony, Mr. Barrett told him that he had been "jumped by a couple gentlemen." Mr. Johnson testified that he "made the connection that . . . maybe there was something to look into this fellow being hurt the night of" the victims' murder, so he contacted law enforcement with this

_____

[3]In support of this assignment of error, petitioner also asserts, in passing, that counsel only met with him "a couple times prior to trial" and, further, that they "did not consult with him regarding grounds to present on direct appeal." However, petitioner cites to no authority requiring that counsel meet with a client for any specific duration prior to trial or an appeal and provides no argument as to how the amount of time counsel met with him was deficient, or, ultimately, any analysis concerning how these allegations constitute ineffective assistance of counsel. Accordingly, these arguments will not be considered, in accordance with Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure.

information. Mr. Johnson testified that he had no other reason to connect Mr. Barrett to the victims. This speculation about how Mr. Barrett may have received his injuries is far from the "best evidence" that was available to the defendant in *Ferguson*. More importantly, in *Ferguson*, the defendant was denied testimony from witnesses that supported his theory of defense. Here, petitioner presented testimony from Mr. Johnson in furtherance of his theory that a third party committed the crimes in question. As such, it is clear that trial counsel investigated the matter thoroughly enough to secure Mr. Johnson's testimony, thereby laying an evidentiary basis for the theory that someone other than petitioner committed the crimes. As such, petitioner's reliance on *Ferguson* is misplaced and he is entitled to no relief in this regard.

In regard to petitioner's second assignment of error, he specifically alleges that his trial attorneys were ineffective with respect to the following portion of the State's closing:

> [The State:] There is no evidence that contradicts what was at Wade Painter's house, what was on Wade Painter's clothes, what was found at that crime scene . . . . It still comes back to Wade Painter and we ask you to find him guilty. Make him take responsibility for what he did and don't believe the web that he tried to spin when he was talking to these officers because every time it comes back to it's in your house, you had control, it's their blood, it's their things, ladies and gentlemen. That has not been refuted in front of you and that - -

> [Defense counsel]: Judge, I would like to offer an objection. There's no burden on the defense.

> [The Court]: That's correct. Ladies and gentlemen, the prosecutor's evidence has not been refuted but there's no burden upon the defendant to prove himself innocent. It is upon the State.

> [The State]: That's absolutely true. I apologize. I misspoke in that regard. It hasn't been refuted. It's not there.

> [Defense counsel]: Same objection, Judge.

> [The Court]: Again, the same ruling of the Court. There's no obligation of the defendant to present any evidence in a criminal case.

On appeal, petitioner alleges that this exchange violated his constitutional rights because (1) the prosecutor's remarks placed an unlawful burden on him to prove himself innocent, thereby shifting the burden of proof in the case; (2) the prosecutor's remarks constitute an impermissible comment on his failure to testify; and (3) the trial court's remarks to the jury constituted an opinion as to a matter that was in the jury's exclusive province, to petitioner's prejudice. Upon our review, we find that petitioner's arguments are without merit.

First, it is important to note that petitioner acknowledges that counsel twice objected to the State's remarks on the basis that they implied petitioner, as the defendant, carried the burden of proof. It is also uncontroverted that defense counsel obtained a favorable ruling and a curative

5

instruction in regard to the comments. While petitioner alleges that counsel was ineffective for failing to raise this issue on appeal, it is clear that he cannot satisfy the standard in *Strickland v. Washington*, 466 U.S. 668 (1984), in regard to this argument. Counsel objected on these grounds, obtained a favorable ruling and a curative instruction, thereby obviating the need to raise the issue on direct appeal.

Second, it is clear that petitioner's trial attorneys provided effective assistance in the manner in which they objected to the State's comments. Petitioner argues that counsel should have made an additional objection on the basis that the comments impermissibly referenced his decision to stand silent. Upon our review, however, we find no error in the lack of such objection because the remarks did not violate the prohibition against commenting on an accused's silence. As this Court has long held,

> [t]he general rule formulated for ascertaining whether a prosecutor's comment is an impermissible reference, direct or oblique, to the silence of the accused is whether the language used was manifestly intended to be, or was of such character that the jury would naturally and necessarily take it to be a reminder that the defendant did not testify.

*State v. Clark*, 170 W. Va. 224, 227, 292 S.E.2d 643, 646 (1982) (citations omitted). The limited and isolated comments referenced above simply do not rise to this level, especially when considering that

> the prosecution is free to stress the strength of the government's case and to argue the evidence and reasonable inferences therefrom, and the prosecutor is not constitutionally forbidden from telling the jury the fact that the evidence on any given point in the case stands uncontradicted. A prosecutor's statement that the evidence is uncontradicted does not "naturally and necessarily" mean the jury will take it as a comment on the defendant's failure to testify. In many instances someone other than the defendant could have contradicted the government's evidence.

*Id.* at 227, 292 S.E.2d at 647 (citations omitted).

Immediately prior to the comments at issue, the prosecutor summarized the evidence in the case for the jury, which included not only references to petitioner and the evidence found in his residence, but also the evidence from the crime scene and other locations. The prosecutor's summarization of the evidence also addressed petitioner's prior statements to law enforcement, which, according to petitioner, ensured that the jury would believe the comments referenced his silence. We do not agree. Instead, it is clear that the prosecutor simply asked the jury to find petitioner guilty based upon the overwhelming physical evidence linking him to the crime scene and in spite of his refusal to acknowledge the same during his statements to police. As such, it is clear that the comments in question did not warrant reversal, and this is especially true given that the cases upon which petitioner relies for support are easily distinguishable from the facts in petitioner's case. *See, e.g.*, *State v. Keesecker* 222 W. Va. 139, 147, 663 S.E.2d 593, 601 (2008) (concluding that reversal was warranted because the prosecutor's multiple remarks concerning

the lack of contradictory testimony "were emphatic enough to produce a pronounced effect upon the jury"); *State v. Oxier*, 175 W. Va. 760, 761, 338 S.E.2d 360, 361 (1985) (finding that reversal was warranted because, in closing, the prosecutor "dwelled *at some length* on the defendant's" pretrial silence) (emphasis added). For these reasons, petitioner is entitled to no relief.

Next, petitioner argues that the circuit court's curative instruction "was more harmful than helpful." According to petitioner, the circuit court's statement that "the prosecutor's evidence has not been refuted" constituted an impermissible comment on the weight of the evidence. We do not agree. Petitioner is correct that, because the jury is the trier of fact, "the court should be extremely cautious not to intimate in any manner, by word, tone or demeanor, his opinion upon any fact in issue." Syl. Pt. 3, in part, *State v. Rogers*, 215 W. Va. 499, 600 S.E.2d 211 (2004) (quoting syl. pt. 7, *State v. Austin*, 93 W. Va. 704, 117 S.E. 607 (1923)). However, petitioner is simply incorrect that the court's comment in this matter rises to the level of intimating its opinion on the facts. Petitioner does not dispute that the evidence was, in fact, unrefuted. Instead, he argues that the prosecutor's statements "implied [he] had some duty to present such evidence." As such, the circuit court was not giving an opinion when it confirmed that the evidence was unrefuted. Instead, the court laid a basis for its ruling, which stemmed directly from the fact that no evidence was presented to refute the State's evidence. This was the crux of petitioner's objection at trial; because he did not have a duty to satisfy any burden of proof, he was not required to present any evidence to refute the State's evidence. Far from being "more harmful than helpful," the circuit court's two instructions to the jury made explicitly clear that "[t]here's no obligation of the defendant to present any evidence in a criminal case." Accordingly, we find that petitioner is entitled to no relief.

Petitioner's third assignment of error concerns allegations that his trial counsel failed to challenge, either at trial or on direct appeal, the introduction of certain evidence that he believes was inadmissible under Rule 404(b) of the West Virginia Rules of Evidence.[4] Specifically, petitioner challenges the admission of testimony that he "spent his paycheck on and consumed Xanax pills and his brother was in prison" and that he "attempt[ed] to sell [a witness] items of personal property[] and firearms." Upon our review, we find no error.

First, it is important to note that trial counsel objected under Rule 403[5] to the testimony that petitioner's brother was incarcerated and obtained a limiting instruction. During the testimony of Angela Conner, the following exchange took place:

---

[4]In support of this assignment of error, petitioner reiterates his argument that because his attorneys "did not adequately investigate the case and consult with [him] . . . any 'strategic' decisions . . . cannot be presumed reasonable." As outlined above, petitioner failed to establish that counsel did not adequately investigate the matter or consult with him.

[5]Rule 403 of the West Virginia Rules of Evidence states as follows: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

> Q.    Does [petitioner] have a brother?
>
> A.    Yes.
>
> Q.    Where does his brother live?
>
> A.    He's in prison right now.

Following the witness's testimony, petitioner's counsel requested a sidebar and requested a curative instruction regarding this exchange. According to the record, counsel objected to the fact that the testimony had "no probative value and [was] highly prejudicial." The circuit court agreed to give an instruction on the testimony and informed the jury that the testimony was to be considered only insomuch as the State sought to establish the brother's location and that the jury could not "consider the fact that he's in prison as any evidence of guilt or innocence in this case." As such, it is clear that petitioner cannot establish a violation of either prong of *Strickland* in regard to this evidence.

Second, we find that the remaining evidence of which petitioner complains was intrinsic to the crimes charged because the State's theory at trial was that petitioner killed the victims and stole various items in order to obtain money. Thus, the evidence was properly admitted. During Ms. Conner's testimony, the following exchange occurred:

> Q.    Let's go to Monday the 12th, do you remember something strange happening at your home that day?
>
> A.    No.
>
> Q.    Let me back you up just a second. Do you remember [petitioner] when he got paid from Brentwood Industries, do you remember when his check came in?
>
> A.    He always got them on a Friday.
>
> Q.    Was there a problem that occurred or something that came to your attention that Sunday or Monday that upset you concerning his paycheck?
>
> A.    The Friday before that.
>
> Q.    What happened?
>
> A.    That he had spent his paycheck on Xanax.
>
> Q.    So that was the 9th; is that right? If Monday was the 11th then we go back to the 9th.

A.      Yes.

Q.      He spent his paycheck on Xanax. How many Xanax pills did he get?

A.      I know he bought 20 of them. I don't know exactly how many the next of the two days.

Q.      Did he go back and get more?

A.      Yes.

Q.      How did he pay for them? Is that still part of the same check?

A.      Yeah.

Q.      And you were upset over that?

A.      Yes.

Q.      Did you watch him consume these Xanax pills?

A.      Yes.

Q.      How many did he take?

A.      I'm not exactly sure. I just know it was like a handful, probably at least ten or more.

Q.      After he would take them what would he do?

A.      Within an hour or two sometimes he passed out.

Q.      Was he drinking at the same time?

A.      Yes.

Q.      What was he drinking?

A.      Usually beer.

While petitioner argues that this evidence should have been barred under Rule 404(b) and counsel was ineffective for failing to raise the issue on appeal, we do not agree. "This Court has consistently held that evidence which is 'intrinsic' to the indicted charge is not governed by Rule 404(b)." *State v. Harris*, 230 W. Va. 717, 722, 742 S.E.2d 133, 138 (2013) (citations omitted). Further,

[o]ne of the accepted bases for the admissibility of evidence of other crimes arises when such evidence "furnishes part of the context of the crime" or is necessary to a "full presentation" of the case, or is so intimately connected with and explanatory of the crime charged against the defendant and is so much a part of the setting of the case and its "environment" that its proof is appropriate in order "to complete the story of the crime on trial by proving its immediate context or the 'res gestae'" or the "uncharged offense is 'so linked together in point of time and circumstances with the crime charged that one cannot be fully shown without proving the other . . .' (and is thus) part of the res gestae of the crime charged." And where evidence is admissible to provide this "full presentation" of the offense, "(t)here is no reason to fragmentize the event under inquiry" by suppressing parts of the "res gestae." As the Court said in *United States v. Roberts*, 548 F.2d 665, 667 (6th Cir.1977), . . . "(t)he jury is entitled to know the 'setting' of a case. It cannot be expected to make its decision in a void without knowledge of the time, place and circumstances of the acts which form the basis of the charge."

*Id.* at 721-22, 742 S.E.2d at 137-38 (quoting *United States v. Masters*, 622 F.2d 83, 86 (4th Cir. 1980)). Here, the State introduced evidence of petitioner's purchase and use of Xanax shortly before the crimes to establish his motivation for committing them. By establishing that petitioner spent his entire paycheck on Xanax and used the pills he purchased, the State was able to establish that petitioner was motivated to commit the crimes in question in order to obtain more money to purchase more pills. As such, this evidence permitted the State to provide a full presentation of the case, including the time, place, and circumstance of the acts upon which the charges were based. Accordingly, we find that the evidence referenced above was not inadmissible 404(b) evidence, as petitioner argues, and that his attorneys were not ineffective for failing to raise such argument on direct appeal.

Further, petitioner takes issue with certain testimony from Kenneth Weigle, who indicated that, around the time of the crimes at issue, petitioner and another individual "came out to [his] house in a van . . . [that] was packed full of stuff," including clothes and several guns. One of the guns was a .25 caliber automatic pistol, which is the same type of gun that was stolen during the commission of the crimes with which petitioner was charged and was also the type of weapon used to kill the victims. According to Mr. Weigle, petitioner showed up with these items because "[h]e was trying to sell them" so he could "get money together for rent." Again, this evidence is directly related to the State's full presentation of the case, as it spoke directly to petitioner's possession of a firearm of the same caliber as the murder weapon. This evidence also related back to the evidence regarding petitioner's motivation for the crimes in question as it further established petitioner's need to obtain money. Accordingly, we find that this evidence was not inadmissible 404(b) evidence and that petitioner's attorneys were not ineffective for failing to raise such argument on direct appeal.

Petitioner's final argument related to his claims of ineffective assistance of counsel concerns his allegation that his trial attorneys were ineffective for failing to seek suppression of his statements to law enforcement and all physical evidence obtained from him on the basis that

he was subject to an illegal de facto arrest and a violation of *Edwards v. Arizona*, 451 U.S. 477 (1981). At the outset, it is important to note that the suppression of this evidence was heavily litigated prior to petitioner's trial and was subject to extensive analysis by both the trial and habeas courts. While it is true that counsel sought suppression on grounds other than those specifically set forth in this appeal, the trial court nonetheless made several findings that are dispositive of the issue and show that petitioner was not entitled to suppression on these grounds, and, thus, that his trial attorneys provided him with effective representation.

In addressing the issue of de facto arrest, we have noted that situations in which a defendant was "not in custody while the interrogation took place" and, in fact, "was told by the police that he was free to leave at any time he chose to do so" do not constitute de facto arrests. *State v. Farley*, 192 W. Va. 247, 254-55 n.10, 452 S.E.2d 50, 57-58 n.10 (1994). Specifically, this Court noted that "[t]elling a suspect that he/she is not under arrest and is free to leave usually is sufficient to prevent a finding of custody and will circumvent a finding of *de facto* arrest." *Id.* (citing *State v. Wyant*, 174 W. Va. 567, 328 S.E.2d 174 (1985); *State v. Stanley*, 168 W. Va. 294, 284 S.E.2d 367 (1981)). Following counsel's attempts to suppress this evidence prior to trial, which included the taking of voluminous evidence, the trial court found that petitioner was not entitled to relief because "he was not 'in custody,'" "voluntarily went with the officers" to their department for questioning, and rode with the officers "because he had no other transportation." Importantly, the trial court found that petitioner "was free to go at any time." While petitioner argues on appeal, as he did below, that "he was not free to leave because he did not have his own car," the habeas court specifically found that this did not amount to a seizure. We agree, and further note that petitioner's trial attorneys testified at the omnibus hearing that "they believed that [p]etitioner had voluntarily accompanied the police" to the station. Moreover, one of petitioner's attorneys testified that he considered the issue of whether petitioner could seek suppression on this basis, "but . . . did not believe he would have a viable argument." Accordingly, we find that petitioner cannot establish either that he was subject to an illegal arrest or that counsel was ineffective for failing to seek suppression on this ground.

Further, petitioner cannot establish any violation of *Edwards*, which held as follows:

> when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. We further hold that an accused . . . having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.

451 U.S. at 484-85. Specifically, petitioner alleges that, after he invoked his right to counsel, Captain Dennis Streets "reinitiated conversations" with him in violation of *Edwards*. We find no error. According to the record, Captain Streets, who had a personal relationship with petitioner, "want[ed] to check on" petitioner to "make sure [he] was doing okay." At trial, Captain Streets testified that he asked "if [petitioner] needed anything," such as "to go to the restroom . . . [or] a drink." According to Captain Streets, petitioner "made the statement basically can you believe

what they said I did." At that point, Captain Streets "told [petitioner] that [he] couldn't talk to [petitioner] about the investigation because [petitioner] had asked for an attorney." According to Captain Streets's testimony, "at some point [petitioner] request[ed] to speak" with him. At that point, Captain Streets again advised petitioner of his *Miranda*[6] warnings and obtained a written waiver from petitioner before taking an additional statement from him.

Based on a review of the evidence, it is clear that it was petitioner, not Captain Streets, who initiated the renewed conversations with police concerning his involvement in the crimes at issue. Petitioner's assertion that Captain Streets's limited inquiry into petitioner's well-being and whether he needed a drink or access to a restroom is insufficient to establish that law enforcement initiated the substantive conversation regarding the crimes. As the United States Supreme Court has noted,

> there are undoubtedly situations where a bare inquiry by either a defendant or by a police officer should not be held to "initiate" any conversation or dialogue. There are some inquiries, such as a request for a drink of water or a request to use a telephone, that are so routine that they cannot be fairly said to represent a desire on the part of an accused to open up a more generalized discussion relating directly or indirectly to the investigation. Such inquiries or statements, by either an accused or a police officer, relating to routine incidents of the custodial relationship, will not generally "initiate" a conversation in the sense in which that word was used in *Edwards*.

*Oregon v. Bradshaw*, 462 U.S. 1039, 1045 (1983). Accordingly, it is clear that petitioner cannot establish an *Edwards* violation and, thus, counsel was not ineffective for failing to pursue such a claim.

Finally, petitioner argues that the habeas court erred in denying his motion to retain an expert. The sole authority upon which petitioner relies to support this argument, however, is inapplicable. According to petitioner, "[e]xpert testimony is admissible in legal malpractice actions." Syl. Pt. 6, *Sheetz, Inc. v. Bowles Rice McDavid Graff & Love, PLLC*, 209 W. Va. 318, 547 S.E.2d 256 (2001). This authority is simply not controlling, as it deals with legal malpractice actions, not post-conviction habeas corpus proceedings, and speaks only to the admissibility of such testimony, not a requirement that indigent parties be permitted to retain such experts. Accordingly, we find no error in the circuit court's denial of petitioner's request to obtain an expert witness.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** June 12, 2019

---

[6]*Miranda v. Arizona*, 384 U.S. 436 (1966).

**CONCURRED IN BY:**

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison