IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2016 Term

**FILED**
**February 12, 2016**
released at 3:00 p.m.
RORY L. PERRY, II CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 14-0780

RICKY VON RAINES,
Petitioner

v.

DAVID BALLARD, Warden,
Mount Olive Correctional Complex,
Respondent

Appeal from the Circuit Court of Logan County
The Honorable Eric H. O'Briant, Judge
Civil Action No. 12-C-102

AFFIRMED

Submitted: January 12, 2016
Filed: February 12, 2016

Mark L. French, Esq.                      Patrick Morrisey, Esq.
Criswell French Condaras PLLC             Attorney General
Charleston, West Virginia                 David A. Stackpole, Esq.
Counsel for the Petitioner                Assistant Attorney General
                                          Charleston, West Virginia
                                          Counsel for the Respondent

JUSTICE WORKMAN delivered the Opinion of the Court.

**SYLLABUS BY THE COURT**

1.      "In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review.  We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review." Syl. Pt. 1, *Mathena v. Haines*, 219 W. Va. 417, 633 S.E.2d 771 (2006).

2.      "In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984):   (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different."  Syl. Pt. 5, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995)*.*

3.      "In reviewing counsel's performance, courts must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions.  Thus, a reviewing court asks whether a reasonable lawyer would have

i

acted, under the circumstances, as defense counsel acted in the case at issue." Syl. Pt. 6, *State*

*v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995).

Workman, Justice:

This case is before the Court upon the appeal of the July 14, 2014, order denying a petition for habeas corpus brought by the Petitioner, Ricky Von Raines. The Petitioner argues that: 1) the circuit court erred in failing to find that his trial counsel provided incorrect and wrong legal advice when he was given the decision to accept or reject a plea agreement before proceeding to trial; and 2) the Petitioner's attorney did not prepare him prior to taking the stand in his own defense.[1] Having thoroughly reviewed the parties'[2]

---

[1]The Court permitted the Petitioner to file a pro se reply brief after his counsel did not file a reply. In the reply brief, the Petitioner argued that: 1) he was given erroneous advice by his trial attorney that the State could not bring a recidivist action against him if the Petitioner proceeded to trial because the Petitioner's past felonies were nonviolent; 2) he was erroneously advised regarding the Post-conviction Plea Offer ("Post-conviction Offer"); and 3) he was not only threatened by the prosecutor and the circuit court with a harsher sentence if he did not accept the Post-conviction Plea Offer, but also that he was ordered to accept the plea by his trial counsel.

We summarily dispense with these additional arguments raised by the Petitioner in his reply. Regarding his first argument, the State responded that the Petitioner acknowledged on the record when rejecting the Pre-trial Plea Offer ("Pre-trial Offer") that the State could bring a recidivist action against him. The record supports the State's position on this point. Thus, we find no merit to this argument. As for the Petitioner's second argument, we discuss the erroneous advice given by the Petitioner's trial counsel in great detail *infra* in section III of this opinion. Regarding the Petitioner's assertion that his trial counsel ordered him to accept the Post-conviction Offer, we find no support in the record to substantiate this assertion. Likewise, there is no support in the record to support the Petitioner's claim that he was threatened by the State and the circuit court with a harsher sentence if he failed to accept the Post-conviction Offer. The transcript of the hearing wherein the Court accepted the Petitioner's Post-conviction plea shows that it was entered into knowingly and voluntarily by the Petitioner.

[2]Because the Petitioner's claims stem from the underlying trial in this matter, we refer
(continued...)

1

briefs and arguments, the joint and supplemental appendices, and all other matters submitted before the Court, we affirm the circuit court's decision denying the Petitioner habeas corpus relief.

At issue in this case are two plea deals offered by the State. The first is the Pre-trial Offer and the second is the Post-conviction Offer regarding the recidivist action. *See* W. Va. Code § 61-11-18 (2014). Because an understanding of what advice was given by the Petitioner's trial counsel in conjunction with each plea is critical to the resolution of this case, we begin with a close examination of the facts as set out in the record.

## I. Facts and Procedural History

On January 13, 2009, the Petitioner was indicted, along with two co-defendants, Timothy Lambert and Jessica Raines, for robbery in the first degree, malicious assault, nighttime burglary and conspiracy. Mark Hobbs, who had previously represented the Petitioner in other criminal matters, was appointed to represent the Petitioner.

### A. Pre-trial Offer

On May 4, 2009, the day before trial, the State extended the Petitioner a plea offer. The next day, at a pre-trial hearing, the Petitioner's trial counsel brought to the circuit court's attention the Pre-trial Offer. The prosecutor informed the circuit court that the Pre-

_____

[2](...continued)
to the Respondent simply as "the State."

2

trial Offer was to "reduce the charge of burglary to breaking and entering which would carry a one- to ten-year sentence, and then he [referring to the Petitioner] would plead guilty to the conspiracy which carries a possible sentence of one to five years." The prosecutor told the circuit court that the decision regarding whether the sentence would be concurrent or consecutive would be left to the court's discretion. Further, the prosecutor informed the circuit court that under the terms of this offer, the State would not pursue any recidivist charge against the Petitioner. Thus, the maximum time in prison faced by the Petitioner under the offered plea was not less than two nor more than fifteen years.

Also at the pre-trial hearing, the Petitioner's trial counsel informed the circuit court that the State had made the Pre-trial Offer to his client, that he had informed his client about the offer, that he recommended that his client accept the offer and that his client rejected the offer. Additionally, the Petitioner's trial counsel placed on the record before the court that he had discussed the recidivist issue with his client as follows:

> I'll be the first to tell you, Judge, I discussed the possibility of recidivist with my client, but either I overlooked or didn't listen, but I was thinking all his felonies were non-violent, and I know burglary at least for purposes of parole is characterized as a violent crime. So I know that if there is a second violent crime conviction, that would present a possible factual basis for the recidivist to the life sentence rather than doubling the minimum.

The Petitioner was asked directly by the circuit court: 1) if he was aware of the Pre-trial Offer; 2) if he understood that the State would forgo filing any recidivist action if he took the

3

offer; and 3) if he had informed his attorney to reject the offer. The Petitioner answered

affirmatively to each of the three areas of inquiry by the court. Additionally, the State clearly

expressed its intention to pursue a recidivist charge against the Petitioner and that it was the

State's position that the Petitioner could be sentenced up to life in the penitentiary if

convicted as a result of the recidivist charge.

### B. The Trial

It is significant that prior to trial, the Petitioner submitted a notice pursuant to

West Virginia Rule of Criminal Procedure 12.1[3] that he would deny any involvement in the

crime and seek to establish an alibi at trial.[4] The trial commenced on May 5, 2009. The

evidence introduced by the State[5] revealed that on August 6, 2008, the Petitioner and his co-

---

[3]West Virginia Rule of Criminal Procedure 12.1(a) provides:

> Upon written demand of the attorney for the state stating the time, date and place at which the alleged offense was committed, the defendant shall serve within 10 days, or at such different time as the court may direct, upon the attorney for the state a written notice of the defendant's intention to offer a defense of alibi. Such notice by the defendant shall state the specific place or places at which the defendant claims to have been at the time of the alleged offense and the names and addresses of the witnesses upon whom the defendant intends to rely to establish such alibi.

[4]According to his trial counsel's testimony during the omnibus hearing, the Petitioner "had always indicated the he was not the one that went in" to the residence where the crimes occurred.

[5]The trial transcript was not submitted as part of the appendix record. The facts regarding the evidence offered at trial are taken from the parties' respective briefs related to
(continued...)

4

defendants conspired to steal medications and guns from the home of Mr. and Mrs. Goble McFarland. The Petitioner's sister, the co-defendant Jessica Raines, was supposed to make sure that no one was home on the evening of the crime.  The Petitioner and his cousin, the co-defendant Timmy Lambert, entered the McFarland home and began searching for medication.  The two discovered Mrs. McFarland in a bedroom.  They tied her up using zip-ties and demanded that she tell them where the medications and firearms were located.  They continued their search of the home for drugs. The Petitioner and his cousin found medications and firearms and returned to the bedroom where Mrs. McFarland was located. The Petitioner struck Mrs. McFarland two to three times in the head, then the men left the home with the stolen items.  Mrs. McFarland received fourteen staples in the back of her head as a result of being hit.

The Petitioner testified at trial.[6]  Prior to his testimony, the circuit court inquired of the Petitioner as to whether his trial counsel reviewed the "Advice of Defendant's Right to Testify" form with him and the Petitioner confirmed that he did.  The court asked

[5](...continued)
the petition for habeas corpus submitted below and found in the joint appendix, as well as from the Petitioner's testimony during his post-conviction plea hearing that occurred on June 24, 2009.

[6]The Petitioner maintained that his trial counsel told him that "the direct evidence is putting you at the crime.  Now you have to take the [s]tand." The Petitioner claimed that his trial counsel had not prepared him to testify and because of the lack of preparation, the Petitioner "perform[ed] poorly on the stand, and incurr[ed] an additional charge for perjury."

the Petitioner if he had any questions regarding his right to testify or his right to remain silent and the Petitioner said, "[n]o, I do not." The circuit court directly asked if the Petitioner understood "that if you give up your right to remain silent and testify, then anything you say here today can be used against you" and the Petitioner responded, "[y]es, sir." The Petitioner also took an oath to testify truthfully before taking the witness stand. The Petitioner then testified and denied that he had any role in the crimes. He further denied being present during the commission of the crimes. Instead, the Petitioner claimed he was at home with his girlfriend at the time of the crimes. The Petitioner's girlfriend also testified in an attempt to corroborate the Petitioner's story. She admitted, however, that she was asleep during the time of the crimes.[7]

The jury convicted the Petitioner of robbery in the first degree, nighttime burglary, and conspiracy. The jury acquitted the Petitioner of malicious assault.

### C. Post-conviction Offer

After the Petitioner's conviction, the State filed a recidivist action against him pursuant to West Virginia Code § 61-11-18, asserting that the Petitioner had multiple prior felony convictions. The State offered a plea deal to the Petitioner that required him to:

> (1) "acknowledge in open Court today that he committed the offenses for which he was convicted;"

---

[7]At a later plea hearing on the Post-conviction Offer, the Petitioner maintained that although he drove his accomplices to the McFarland home, he never entered the house.

(2) plead guilty to Perjury and be sentenced to a term of one (1) to five (5) years;

(3) be sentenced to a term of one (1) to five (5) years on the Conspiracy conviction;

(4) be sentenced to a term of one (1) to fifteen (15) years on the Burglary conviction;

(5) be sentenced to not less than thirty (30) years on the Aggravated Robbery conviction;

(6) "acknowledge in open court . . . [that the Petitioner is] the same person that was convicted of burglary in Case No. 03-F-42-0"for recidivist purposes and be sentenced to an additional five (5) years on that basis; and

(7) have all the sentences run concurrently.

It was understood that under this Post-conviction Offer the Petitioner would be eligible for parole after serving a minimum of ten and one-half years.[8]

At a June 23, 2009, status conference, one day before the Petitioner's recidivist trial was scheduled to commence, the State explained that the Post-conviction Offer was off the table. During an explanation to the circuit court concerning the negotiations that had transpired between the Petitioner and the State relating to the Post-conviction Offer, the Petitioner's counsel argued that under the recidivist statute "that the sentence is just life." The prosecutor, however, disagreed, stating that the life sentence is "just an additional sentence he's going to get" and that the prosecutor was going "to ask for 80 years[.]" In

---

[8]The offer was conveyed by trial counsel to the Petitioner, but the Petitioner rejected the offer and made a counter-offer. Under the Petitioner's counter-offer, the Petitioner would be sentenced to forty years, with discharge at twenty years and parole eligibility in ten years. The State rejected the counter-offer and was planning to seek the maximum sentence.

response to the prosecutor's argument, the Petitioner's trial counsel said: "Judge, if that's correct law, I've told my client wrong and I want that to be right up front, because I told him that the only sentence tomorrow would be if he's convicted, that he would be sentenced to life and be eligible after 15 years."

Prior to the foregoing argument, the Petitioner's trial counsel had not taken a position on whether his client should take the Post-conviction Offer. After the State made its position clear, the Petitioner's trial counsel stated that

> [i]f the Court is inclined to think that it can sentence to life and then also sentence on the underlying crimes, I do recommend this offer. Of course, I know . . . [the prosecutor] is withdrawing it, but I may add it would be withdrawn only because of my mistake in the application of the law to the facts."

Thereafter, the circuit court explained to the Petitioner's trial counsel that with "multiple convictions occurring on the same day, arising from separate acts" meant that "there can only be one enhancement." The court further explained that it could give separate sentences on the other convictions and could also determine that the sentences should run consecutively.

The Petitioner's trial counsel informed the circuit court that the Petitioner had rejected the plea due to "erroneous advice." As the Petitioner's trial counsel told the circuit court:

Judge, if the Court is inclined to think that they can still sentence under the underlying offense, then this offer was basically rejected because of erroneous advice. He asked me "what's the worst that could happen," and I said the worst that could happen is a life sentence with an eligibility, which I checked the Code again, a parole eligibility date of 15 years.

If the Court is inclined to think not only can he get a life sentence, but it can go back and sentence him for the underlying aggravated robbery, my advice would be entirely different from when this offer was made. If the Court is inclined to think that it can do that, then my opinion on this offer would drastically change.

The circuit court again explained to the Petitioner's trial counsel that only one of the convictions could be enhanced, but that the State could seek consecutive sentencing.

At this point, the prosecutor put the Post-conviction Offer back on the table. After the Petitioner's trial counsel conferred with the Petitioner, the Petitioner accepted the offer so long as he could keep his right to appeal.[9] The State agreed to this.

The next day, June 24, 2009, a plea hearing was held in which the Petitioner pled guilty to both the recidivist and the perjury charges. The Petitioner testified that he went over all the documents regarding the Post-conviction Offer, read them himself, discussed it

---

[9]The Petitioner appealed this issue, arguing that his three felony convictions resulting from the McFarland robbery should be treated as one conviction subjecting the Petitioner to only one term of incarceration – life with parole eligibility in fifteen years. This Court rejected that argument in *State v. Von Raines*, No. 101296, (W.Va. Apr. 18, 2011)(memorandum decision).

9

"[t]horoughly" with his trial counsel, and "completely comprehend[ed] it." The Petitioner further testified that he met with his trial counsel between ten and fifteen times since the criminal matter started and that they had been together constantly during the trial. When asked by the circuit court if he was satisfied with the work his trial counsel had done for him during the case, the Petitioner stated, "I'm more than satisfied, yes." The court also asked the Petitioner if there was anything that he could think of that he asked of his trial counsel that his trial counsel failed to follow up on. The Petitioner responded, "Not at the current time, no." Finally, the court asked the Petitioner if he was satisfied overall with his trial counsel compared to other attorneys he had had in other counties. The Petitioner responded, "Completely, yes."

Upon accepting the Petitioner's plea, the circuit court sentenced him a term of: two to fifteen years on the burglary charge;[10] thirty years on the robbery charge; and one to five years on the conspiracy charge. The sentences were to run consecutively. The court also sentenced the Petitioner to a term of one to ten years on the perjury charge. The perjury sentence was to run concurrently with the conspiracy sentence.[11]

---

[10]The Petitioner's conviction for burglary was enhanced pursuant to West Virginia Code § 61-11-18.

[11]The circuit court noted that the State represented that "it would be a 10 ½ year minimum sentence before he would be eligible for parole considerations."

## D. Habeas Proceeding

On April 25, 2012, the Petitioner filed a petition for writ of habeas corpus. The Petitioner alleged that his trial counsel was ineffective based upon erroneous advice provided before trial and that his trial counsel failed to adequately prepare the Petitioner for his trial testimony. On October 23, 2013, the circuit court held an omnibus hearing during which both the Petitioner and his trial counsel testified.

The Petitioner initially testified that his trial counsel told him regarding the Pre-trial Offer that no recidivist proceeding would stand because two of the three prior felonies had to be violent and a prior conviction that was reduced to attempted burglary was not a violent crime. The Petitioner understood that under the Pre-trial Offer "it was a one to ten and a one to five, to run consecutive or I face the recidivist statute." The Petitioner further stated that he knew that he "either had an option of two felony charges that could have been one to ten years or two to fifteen, depending on what the court did . . . [o]r a life sentence [with parole eligibility after fifteen years] if . . . [he] went to trial"and were convicted. The Petitioner further testified that his trial counsel "said they cannot sentence you on both of those underlying charges. It has to be one or the other, either what you are convicted for or the habitual recidivist act." According to the Petitioner, he rejected the Pre-trial Offer because of his counsel's advice regarding sentencing.

11

The Petitioner also testified on cross-examination that he maintained his innocence throughout the case. Significantly, the Petitioner told the circuit court that

> [t]he reason why I refused t[o] accept it [the Pre-trial Offer] is because the State was trying to say that I had involvement, that Vickie McFarland had gotten hurt in the process of the robbery. They was trying to pin it all basically on me to say that I broke into that residence and I never entered the McFarland residence. I proved that at trial and got found not guilty of it [referring to malicious assault].

The Petitioner admitted that he understood the Pre-trial Offer made by the State. The Petitioner maintained, however, that he did not know if he rejected the Pre-trial Offer he could possibly receive a life sentence as a recidivist conviction, plus sentences on the additional convictions to run consecutively. The Petitioner also testified that his trial counsel recommended to him to accept the offer. As the Petitioner testified, his trial counsel "said to [him] . . . that the State had recommended the plea offer and he said it was significantly less time than what you are indicted on."

The Petitioner's trial counsel testified at the omnibus hearing that he spoke with the Petitioner about taking the Pre-trial Offer. The Petitioner's trial counsel discussed the possibility of a recidivist sentence with the Petitioner and inquired about the nature of the Petitioner's previous convictions in order to "determine if a substantial portion of them were violent." Trial counsel further testified that he "highly recommended" the Pre-trial Offer to the Petitioner. According to the Petitioner's trial counsel, even a court reporter, who was

12

in the room at the time, told the Petitioner that he "was not using his head for not taking this plea because to (sic) many bad things can happen with the nature of the offenses." His trial counsel stated that the reason the Petitioner rejected the Pre-trial Offer was "because he didn't feel his involvement was worth accepting the two to fifteen or that risk." The Petitioner's trial counsel indicated that the Petitioner never once asked if he was going to get additional time beyond life imprisonment on the recidivist charge. The Petitioner's trial counsel explained that the entire reason he placed the Pre-trial Offer upon the record before the circuit court was because he believed that the offer should have been accepted by the Petitioner.

Concerning the Petitioner's claim that his trial counsel failed to prepare him to testify at trial, his trial counsel testified that he could not remember the specifics of what he discussed with the Petitioner. Explaining further, trial counsel testified:

> I do remember going to the jail and I'm sure I gave like most clients, the point/counterpoint about what is good and bad that can happen if you testify. I probably told him as I mentioned earlier. I don't know in recent memory that I can remember a client who was acquitted that testified.

Following the omnibus hearing, the circuit court found, by order entered July 14, 2014, that the only pre-trial advice given to the Petitioner was that trial counsel told him that the Petitioner could possibly face a life sentence. The circuit court found:

13

> Trial counsel specifically told Petitioner that a conviction of a
> second violent crime could serve as the basis for a life sentence
> as a recidivist offender. There was no discussion between trial
> counsel and Petitioner prior to trial as to how he might be
> sentenced if there were multiple convictions in the jury trial. .
> . . Trial counsel testified that . . . he advised his client that if he
> were convicted of a violent crime, the State could proceed with
> a recidivist action.

The circuit court further found the Petitioner's contention that "had he received correct advice as to what his sentence could be for multiple convictions, he would have accepted the plea offer made prior to trial[,]" to be "incongruous with Petitioner's own testimony that he was innocent of the crimes charged[.]" Instead, the court found that he rejected the Pre-trial Offer because "[t]hey [the State] was [sic] trying to pin it all basically on . . . [the Petitioner] . . . ." The court expressly found the Petitioner's trial counsel to be "the more credible witness" on this issue. The court denied the Petitioner's request for relief on the ground that his trial counsel failed to accurately advise him regarding the possible sentences.

Further, the circuit court, finding the Petitioner's trial counsel's testimony to be the more credible, also determined that trial counsel had discussed the Petitioner's trial testimony with him in deciding whether the Petitioner should testify. The circuit court rejected the Petitioner's claim that he was entitled to habeas relief "because trial counsel failed to advise him not to lie on the stand. . . ."

14

## II. Standard of Review

We have previously held:

In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review.

Syl. Pt. 1, *Mathena v. Haines*, 219 W. Va. 417, 633 S.E.2d 771 (2006). Applying this standard of review, we examine the issues before us.

## III. Discussion of Law

We first address the Petitioner's assertion that his trial counsel provided him with incorrect or deficient legal advice when he was presented with the decision either to accept a plea agreement or reject it and proceed to trial. Our standard for evaluating counsel's effectiveness is well settled. In syllabus point five of *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995), this Court adopted the following two-pronged test established by the United States Supreme Court:

In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984): (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.

*Miller*, 194 W. Va. at 6, 459 S.E.2d at 117, Syl. Pt. 5. This Court provided further guidance in *Miller*:

15

In reviewing counsel's performance, courts must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. Thus, a reviewing court asks whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue.

*Id.* at 6-7, 459 S.E.2d at 117-18, Syl. Pt. 6.

We have applied the foregoing *Miller/Strickland* standards for evaluation of ineffective assistance of counsel claims to cases involving guilty pleas. *See* Syl. Pt. 3, *Becton v. Hun*, 205 W. Va. 139, 516 S.E.2d 762 (1999) (applying *Strickland* and *Miller* in holding that "[o]bjective professional standards dictate that a criminal defense attorney, absent extenuating circumstances, must communicate to the defendant any and all plea bargain offers made by the prosecution. The failure of defense counsel to communicate any and all plea bargain proposals to the defendant constitutes ineffective assistance of counsel, absent extenuating circumstances."); Syl. Pt. 6, *State ex rel. Vernatter v. Warden*, 207 W. Va. 11, 528 S.E.2d 207 (1999) ("In cases involving a criminal conviction based upon a guilty plea, the prejudice requirement of the two-part test established by *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995), demands that a habeas petitioner show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."). Moreover, in *Buffey v. Ballard*, ___ W. Va. ___, ___S.E.2d ___,

16

2015 WL 7103326 (W. Va. November 10, 2015), we discussed "[t]he critical nature of plea negotiations" in the context of effective assistance of counsel during the pre-plea stage. *Buffey*, 2015 WL 7103326, at \*7 (citing *Lafler v. Cooper*, 132 S.Ct. 1376, 1384 (2012)[12]).

---

[12]The State argues that "this Court has not directly addressed the situation where alleged ineffective assistance of trial counsel caused a criminal defendant [to] decline a plea offer and proceed to a jury trial resulting in a less favorable outcome." The State directs the Court's attention to the United States Supreme Court's decision in *Lafler* and urges this Court to adopt the following language from that decision:

> [A] defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.,* that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Lafler*, 132 S. Ct. at 1385; *see Foster v. Ballard,* No. 14-1023, 2015 WL 6756866, at \* 5 (W.Va. Nov. 4, 2015) (memorandum decision) (involving trial counsel's failure to convey plea offer to petitioner and relying upon United States Supreme Court's decision in *Missouri v. Frye*, 132 S.Ct. 1399, 1409 (2012) – decided the same day as *Lafler* – requiring that "[t]o establish prejudice in this instance, it is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time.").

While we have discussed *Lafler* with approval in *Buffey* and other memorandum decisions, we see no need to expand our law in the factual context of the instant case, as requested by the State**.** *See Minda v. Ballard*, No. 14-0334, 2015 WL 1235229, at \*1 (W.Va. Mar. 16, 2015) (memorandum decision) (upholding circuit court's denial of habeas relief after examining the petitioner's claim of ineffective assistance of counsel regarding the State's plea offer in light of United State's Supreme Court decision in *Lafler*); *see also Danny S. v. Ballard*, No. 13-0946, 2015 WL 424957, at \*25 (W.Va. Jan. 30, 2015) (memorandum decision) (affirming circuit court's denial of habeas relief based upon application of *Miller* and *Lafler* where petitioner claimed trial counsel failed to tell him about *Kennedy* plea and that he did not understand that there was *Kennedy* plea, where he did not

(continued...)

17

The Petitioner's alleged ineffective assistance of counsel is largely premised upon the advice that the Petitioner's trial counsel gave to him prior to the Post-conviction Offer at which time it was evident from the record that his trial counsel did not correctly understand the application of the recidivist statute.[13] The Petitioner claims his trial counsel told him that his prior convictions could not be used in the application of the recidivist statute because they were not violent crimes. The Petitioner further contends that his trial counsel told him that he could not receive consecutive sentences in addition to an enhanced sentence. The record, however, simply fails to support the Petitioner's contentions. As the circuit court found, "no such pre-trial advice was given other than to tell [the] Petitioner that he could possibly face a life sentence." Further, finding trial counsel was the more credible witness,[14]

---

[12](...continued)
have to admit guilt). Significantly, in *Lafler*, the Supreme Court resolved the ineffective assistance of counsel claim applying *Strickland*. *Lafler*, 132 S.Ct. at 1384-1391. Further, the *Lafler* decision was the result of a defendant being offered a favorable plea and rejecting the favorable plea on advice of counsel, which advice was undisputedly deficient. *Id*. at 1383. The defendant then went to trial and after the jury convicted him, he received a sentence that was much harsher than that offered in the rejected plea. *Id*. The facts now before us are distinguishable from those in *Lafler*. In the instant matter, the Petitioner's trial counsel "highly recommended" to the Petitioner that he accept the Pre-trial Offer as the sentence exposure under the terms of the offer was significantly less than if he went to trial and faced a recidivist action. As discussed in greater detail *infra*, the Petitioner's rejection of the plea was not due to any advice given by trial counsel, but emanated from the Petitioner maintaining that he was innocent of the charges and believing the State was trying to pin everything on him.

[13]*See* W. Va. Code § 61-11-18.

[14]As we have previously recognized, "where there is a conflict of evidence between defense counsel and the defendant, the circuit court's findings will usually be upheld." *State*

(continued...)

18

the circuit court determined that the reason the Petitioner rejected the Pre-trial Offer was due to his claim he was innocent of the crimes charged, not because of any "expressed concern" he could get time in addition to the life sentence.

Our review of the record, including the omnibus evidentiary hearing transcript, supports the circuit court's assessment of the evidence presented before it. The habeas court found that "[i]t is clear from Petitioner's own testimony, and that of trial counsel, that Petitioner, contrary to advice of counsel, proceeded to trial because he believed that the State could not meet its burden of proof that he was guilty of the crimes charged, rather than any threat of punishment." Despite the Petitioner's contention that he would have accepted the Pre-trial Offer from the State, but for his trial counsel's alleged erroneous advice, we find the facts render the Petitioner's argument untenable. Significantly, the Petitioner uses the facts from the Post-conviction Offer to support his position that but for the wrong advice given in connection with the Post-conviction Offer, he would not have rejected the Pre-trial Offer. The Petitioner's argument ignores the fact that the incorrect information trial counsel gave the Petitioner regarding the recidivist statute occurred *after* the Petitioner rejected the Pre-trial Offer – an offer his trial counsel recommended the Petitioner accept. Thus, the Petitioner cannot meet the first prong of *Miller/Strickland* as he has failed to show that his

[14](...continued)
*ex rel. Daniel v. Legursky*, 195 W. Va. 314, 327, 465 S.E.2d 416, 429 (1995).

19

trial counsel's performance was deficient under an objective standard of reasonableness regarding the Pre-trial Offer. *See Miller*, 194 W. Va. at 6, 459 S.E.2d at 117, Syl. Pt. 5.

Further, in reviewing the undisputedly erroneous advice provided by the Petitioner's counsel in conjunction with the Post-conviction Offer, the circuit court found:

> It is clear from the record, and uncontested, that trial counsel had a mistaken belief that the Trial Court could not sentence Petitioner for multiple convictions to any additional time in addition to a life sentence if he was found guilty of being a habitual criminal with at least two prior qualifying felony convictions. However, that did not become an issue until the day of the scheduled trial in the habitual offender proceeding. That misunderstanding by [t]rial counsel was corrected by the Trial Court. Thereafter, Petitioner and trial counsel had the opportunity to thoroughly discuss the matter, and the Petitioner ultimately received the benefit of his plea bargain with the State at the habitual offender proceeding, a sentence with a parole eligibility date in less time (ten and one half years) than life in prison (minimum fifteen years).

Although trial counsel's "performance was deficient under an objective standard of reasonableness[,]" the circuit court, the State, and trial counsel realized the Petitioner had been given erroneous advice that caused him to reject the Post-conviction Offer initially. *See id*. The State re-extended the Post-conviction Offer and the Petitioner accepted that offer. The re-extending of the Post-conviction Offer cured any prejudice that could have been caused by the erroneous advice given. Thus, the circuit court correctly determined that the Petitioner cannot meet the second prong of the *Miller/Strickland* test as

20

he cannot establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *See id.*

Finally, we address the Petitioner's second assigned error that his attorney did not prepare him adequately for cross-examination nor did his attorney explain the ramifications of lying under oath. Succinctly stated, the Petitioner cannot meet either of the prongs necessary to prove ineffective assistance of counsel on this issue. *See id.* The circuit court, finding the Petitioner's trial counsel to be more credible, concluded that trial counsel did prepare the Petitioner to testify "in his 'point/counterpoint' discussion in deciding whether the Petitioner would testify and, if so, what he claimed to be the truth." Further, the Petitioner voluntarily decided to take the witness stand in his own defense with full knowledge of his right to remain silent. We, therefore, find no error in the circuit court's denial of habeas relief on this issue and the circuit court's rejection of the "Petitioner's claim that he is entitled to relief because trial counsel failed to advise him not to lie on the stand."

## IV. Conclusion

Based upon the foregoing, the circuit court's decision to deny the petition for habeas corpus relief is affirmed.

Affirmed.