# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**Ronnie L. Gunther,**
**Petitioner Below, Petitioner**

**vs.) No. 18-0449** (Wayne County 15-C-223)

**Donnie Ames, Superintendent,**
**Mt. Olive Correctional Complex,**
**Respondent Below, Respondent**

**FILED**

**November 8, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Ronnie L. Gunther, by counsel Timothy Rosinsky, appeals the April 11, 2018, order of the Circuit Court of Wayne County denying his petition for writ of habeas corpus. Respondent Donnie Ames, Superintendent, Mt. Olive Correctional Complex,[1] by counsel Caleb A. Ellis, filed a response in support of the circuit court's order. On appeal, petitioner argues that the circuit court abused its discretion in denying his petition for writ of habeas corpus on the grounds that he received ineffective assistance of counsel and that said assistance was so deficient he was induced to enter a guilty plea.

The Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In November of 2013, petitioner attended a social gathering in Wayne County, West Virginia. At the gathering, petitioner and another guest, Mr. Ward, began to argue, which ultimately led to petitioner shooting Mr. Ward at least twice. Mr. Ward ("the victim") died as a result of the wounds. Petitioner returned to his home and waited for police. Once law enforcement arrived, petitioner stated that he shot the victim because the victim abused women and needed to

---

[1]Petitioner listed Ralph Terry, former Warden of Mt. Olive Correctional Complex, as respondent in this matter. The current superintendent is Donnie Ames. Accordingly, the appropriate party has been substituted per Rule 41(c) of the West Virginia Rules of Appellate Procedure. Additionally, effective July 1, 2018, the positions formerly designated as "wardens" are now designated as "superintendents." *See* W. Va. Code § 15A-5-3.

1

be "taxed." In March of 2014, petitioner was indicted for first-degree murder, and the Wayne County Public Defenders' office was appointed as petitioner's counsel. Three attorneys from this office, Ms. Maynard, Mr. Wible, and Ms. Preece (collectively, "counsel"), were assigned as counsel. Counsel filed several pretrial motions on petitioner's behalf, on which the circuit court held a pre-trial hearing in May of 2014. Critically, the circuit court denied petitioner's motion to suppress his inculpatory statements to law enforcement.

In August of 2014, petitioner filed a pro se motion for appointment of new counsel, and the circuit court held a hearing on the motion. Petitioner asserted that he "bumped heads" with his counsel and took particular issue with Ms. Maynard's lack of murder trial experience. Petitioner acknowledged that he refused to meet with Ms. Maynard several times during her visits to the regional jail. Additionally, petitioner stated that his counsel would not consider his self-defense claim and attempted to persuade him to accept a plea. Ultimately, the circuit court denied petitioner's motion. In response, petitioner stated, "I won't talk to them no more. After today, this is the last time I talk to them." Petitioner's trial was set for September of 2014.

Petitioner's counsel sent a letter to petitioner in the days leading up to his trial. In the letter, Ms. Maynard indicated her willingness to pursue petitioner's self-defense claim, but, based on the evidence available, advised the success of the defense would be limited. Petitioner's self-defense claim was based on his assertion that the victim brandished a knife prior to the shooting. However, as Ms. Maynard wrote in the letter, no evidence supported this assertion. Witnesses did not observe a knife, law enforcement did not recover a knife from the victim's body or the scene, and the assertion was contrary to petitioner's initial statements to law enforcement. Petitioner believed his wife would testify that she observed a knife, but the State obtained a recorded phone call during which petitioner "strongly coached" his wife on her testimony and provided her a detailed description of the knife.[2] Ms. Maynard advised petitioner to accept the State's plea offer of first-degree murder, with mercy, and a condition not to pursue recidivist charges.

Petitioner was transported for trial in September of 2014 and, ultimately, accepted the State's plea offer. In petitioner's "Statement in Support of Guilty Plea" forms, he indicated that he was unsatisfied with his counsel, but also stated he did not wish to discuss the matter with the circuit court. Nevertheless, the circuit court questioned petitioner regarding his misgivings with his counsel. When the circuit court asked him directly, petitioner stated he had no complaints with his counsel. The circuit court concluded that petitioner entered into the plea agreement knowingly and voluntarily and accepted his guilty plea. Petitioner was sentenced the same day to life in prison, with mercy. The circuit court memorialized the decision in its October 4, 2014, order. Petitioner did not appeal that order.

Petitioner, by newly appointed counsel, filed a petition for writ of habeas corpus in November of 2016. The circuit court held an omnibus hearing in August of 2017. Petitioner, his brother, and Ms. Maynard testified. Petitioner's brother testified that he offered his help to defense counsel, but admitted that he was not present at the scene of the crime and did not know the victim. Petitioner's testimony highlighted his tumultuous relationship with his counsel. Petitioner testified that he tried to assert his self-defense theory to counsel, but "they wasn't having none of it."

---

[2]Additionally, petitioner's wife's initial statement to the police did not mention a knife.

Petitioner testified that the victim was a disreputable gentleman in the community, who "liked to scrap" and was known to carry a knife.[3]

Despite petitioner's assertions that counsel never discussed the State's evidence against him, he referenced witness statements that were taken by law enforcement and included in the State's discovery. One such statement placed a witness at the scene, and petitioner noted he observed someone in a nearby garage, but could not recognize the person. However, petitioner also asserted that at the time of the shooting, only he and the victim were present. Petitioner further testified that, the day of the trial, counsel informed petitioner that his wife, whom he relied on to support his self-defense claim, would not testify because she was afraid of him. On cross-examination, petitioner acknowledged the timeline of the events that he testified to during his plea hearing: petitioner and four other individuals were drinking; he entered into an argument with the victim; and he shot the victim. When asked during the plea hearing if he was threatened by the victim, petitioner stated, "no" and "I was drunk" as justification for the shooting. During his omnibus hearing testimony, petitioner frequently asserted that he was "tore up" and under great emotional distress the day of his expected trial, but, ultimately, acknowledged that his testimony during the plea hearing was truthful, with the exception that he was unsatisfied with his lawyers.[4]

Ms. Maynard testified that a thorough investigation was conducted by her office's private investigator, who produced a report that summarized his work. However, despite this investigation, no evidence was uncovered that the victim possessed a knife at the time of the shooting. In fact, counsel's investigation revealed petitioner as the aggressor. Ms. Maynard also testified that petitioner's wife's credibility would be jeopardized by the recorded calls with petitioner. Accordingly, Ms. Maynard decided not to present the wife's testimony. Ms. Maynard testified that, based on these factors, she recommended that petitioner accept the State's plea offer and believed it was in his best interest.

The circuit court entered an order denying petitioner's petition for writ of habeas corpus in April of 2018. The court found that counsel properly investigated petitioner's self-defense claim and correctly identified the serious issues with that defense. The court concluded that counsel's advice that petitioner's self-defense claim was a losing argument was reasonable under an objective standard and denied relief upon this claim. Further, the court considered petitioner's claim that, due to counsel's ineffective assistance, his only option to enter a guilty plea, but found that the advice provided by his counsel did not fall below an objective standard of reasonableness. Further, the circuit court noted petitioner's multiple acknowledgements during the plea hearing that he decided to enter into the plea agreement and was satisfied with his decision. Accordingly,

---

[3]On appeal, petitioner asserts that he provided counsel with a list of possible character witnesses to confirm that the victim frequently carried a knife. However, his testimony below does not support his later assertion that such a list was provided.

[4]During the omnibus hearing, the circuit court asked the following of petitioner: "Did you tell me anything in your plea [hearing] that was actually untrue, except for the fact that you weren't satisfied with your lawyers?" Petitioner responded, "No, sir."

petitioner was denied relief on this basis as well.[5] Petitioner now appeals the circuit court's April 11, 2018, order.

Our review of the circuit court's order denying petitioner's petition for a writ of habeas corpus is governed by the following standard:

> "In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review." Syllabus point 1, *Mathena v. Haines,* 219 W.Va. 417, 633 S.E.2d 771 (2006).

Syl. Pt. 1, *State ex rel. Franklin v. McBride*, 226 W. Va. 375, 701 S.E.2d 97 (2009).

On appeal, petitioner argues the circuit court abused its discretion in denying his petition for writ of habeas corpus based on counsel's failure to adequately investigate the charges and that said failure induced him to plead guilty. Petitioner argues that the circuit court ignored counsel's failure to investigate the victim's violent reputation or present evidence of the same. Petitioner argues that if counsel properly investigated his claims, then his self-defense claim would have been viable. We disagree and find petitioner is entitled to no relief.

> "In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Syl. Pt. 5, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995).

Syl. Pt. 2, *Raines v. Ballard*, 236 W. Va. 588, 782 S.E.2d 775 (2016). Importantly, hindsight is not to be applied to the objective standard:

> "In reviewing counsel's performance, courts must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. Thus, a reviewing court asks whether a reasonable

---

[5]The circuit court analyzed and denied petitioner relief based on numerous grounds asserted below, including petitioner's alleged incompetency at the plea hearing due to medication, counsel's refusal to subpoena witnesses, counsel's incorrect legal advice, and counsel's failure to confer with petitioner to prepare a defense. On appeal to this Court, petitioner challenges only the circuit court's ruling that counsel was effective in investigating petitioner's charges and that counsel's alleged ineffectiveness induced him to plead guilty. Accordingly, those are the only grounds addressed by the Court in this memorandum decision.

lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue." Syl. Pt. 6, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995).

*Raines*, 236 W. Va. at 589, 782 S.E.2d at 776, syl. pt. 3. This Court has held "[w]hat defense to carry to the jury, what witnesses to call, and what method of presentation to use is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess." *State v. Miller*, 194 W. Va. 3, 16, 459 S.E.2d 114, 127 (1995). Importantly, "[w]here a counsel's performance, attacked as ineffective, arises from occurrences involving strategy, tactics and arguable courses of action, his conduct will be deemed effectively assistive of his client's interests, unless no reasonably qualified defense attorney would have so acted in the defense of an accused." Syl. Pt. 5, *Ballard v. Thomas*, 233 W. Va. 488, 759 S.E.2d 231 (2014) (internal citations omitted). Yet, "[t]he fulcrum of any ineffective assistance of counsel claim is the adequacy of counsel's investigation. . . . [T]he presumption [of reasonableness] is simply inappropriate if counsel's strategic decisions are made after an inadequate investigation." Syl. Pt. 3, in part, *State ex rel. Daniel v. Legursky*, 195 W. Va. 314, 465 S.E.2d 416 (1995).

In this case, counsel utilized an investigator who, based on his report, interviewed potential eye witnesses, law enforcement officers, and individuals specified by petitioner, such as his wife. Importantly, the investigator did not ignore any potential witnesses identified by petitioner.[6] Despite petitioner's assertions of the victim's reputation, he did not suggest any person to interview for this information, except for the individuals present the night of the crime. Yet, none of the information obtained during the investigation supported petitioner's self-defense claim. Ms. Maynard testified that she was "bound and determined to try to find the knife" that petitioner claimed the victim possessed, but "unfortunately, there was nothing that [petitioner] could tell me about how I could . . . actually physically find a knife."[7] Ms. Maynard informed petitioner that if he knew who might have the knife, then she could request permission from the circuit court to seize it. But, at some point, petitioner "instructed me: No, that there was no way to find the knife. The knife was gone." Further, petitioner's wife, the potential corroborating witness in the self-defense claim, was subject to considerable credibility issues discovered during counsel's preparation of the case. The circuit court found that the recorded phone calls between petitioner and his wife were clearly damaging. Finally, petitioner's inculpatory statements to law enforcement did not support the self-defense claim. Law enforcement officers quoted petitioner to say, "I [expletive] shot him. He got what he deserved. He always beats on women. Sometimes people need to be taxed. You boys can't do it. So I had to do it." In short, there were no witnesses who could support petitioner's theory of self-defense, and the failure to present such a defense to the charges against petitioner was not due to a lack of a proper investigation on counsel's part. The circuit court did not abuse its discretion in finding that counsel reasonably investigated the charges and provided petitioner effective assistance in that regard.

---

[6]During petitioner's plea hearing, the circuit court inquired of petitioner whether his counsel subpoenaed the witnesses he desired, and he answered affirmatively.

[7]Neither the knife petitioner claims the victim carried nor the gun petitioner used in the commission of the crime were recovered. Petitioner believed that someone other than law enforcement confiscated the knife and gun from the scene.

Petitioner argues that due to counsel's ineffective assistance he felt that a guilty plea was his only option. We note that in cases involving guilty pleas "the prejudice requirement of the two-part test established by *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.E.2d 675 (1984), and [*Miller*], demands that a habeas petitioner show that there is a reasonable probability that, but for counsel's error, he would not have pleaded guilty and would have insisted on going to trial." Syl. Pt. 6, in part, *State ex rel. Vernatter v. Warden, W. Va. Penitentiary*, 207 W. Va. 11, 528 S.E.2d 207 (1999). We have held that

> [t]he prejudice prong does not require a defendant to show that going to trial would have been the best objective strategy or even an attractive option. It merely requires the defendant to show a reasonable likelihood that a person in the defendant's shoes would have chosen to go to trial. The decision does not need to be optimal and does not need to ensure acquittal; it only needs to be rational.

*State v. Hutton*, 239 W. Va. 853, 862, 806 S.E.2d 777, 786 (2017). Notably, petitioner failed to show that his counsel was deficient under an objectively reasonable standard. Petitioner further fails to show that going to trial would have been a rational decision under the circumstances of this case. Petitioner was fully informed of the lack of evidence in support of his self-defense claim and that the evidence, such as petitioner's own inculpatory statements, supported a first-degree murder conviction. Moreover, due to two prior felony convictions petitioner was subject to West Virginia Code § 61-11-18(c), also known as the West Virginia Habitual Offender Act and benefitted from the State's agreement not to pursue those charges if he accepted the plea.[8] Based on this evidence, a rational person would accept a plea offer that provided the best possible outcome if convicted: a life sentence with the possibility of parole. Accordingly, the circuit court did not err in finding petitioner was provided effective assistance of counsel and was not induced into entering a plea due to counsel's assistance.

For the foregoing reasons, the circuit court's April 11, 2018, order denying petitioner's writ of habeas corpus is hereby affirmed.

Affirmed.

**ISSUED**: November 8, 2019

**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison

---

[8]West Virginia Code § 61-11-18(c) provides that "when it is determined . . . that such person [has] been twice before convicted in the Untied States of a crime punishable by confinement in a penitentiary, the person shall be sentenced to be confined in the state correctional facility for life."