# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Edward Omarrah,**
**Petitioner Below, Petitioner**

**vs.)  No. 18-0754** (Mercer County 15-C-427-DS)

**Donnie Ames, Superintendent,**
**Mount Olive Correctional Complex,**
**Respondent Below, Respondent**

**FILED**

**January 17, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Edward Omarrah, by counsel Paul R. Cassell, appeals the July 26, 2018, order of the Circuit Court of Mercer County denying his petition for a writ of habeas corpus. Respondent Donnie Ames, Superintendent, Mount Olive Correctional Complex, by counsel Shannon Frederick Kiser, filed a response in support of the circuit court's order.[1] On appeal, petitioner argues that the circuit court erred in denying his petition for habeas relief based on his claims of ineffective assistance of counsel and an involuntary guilty plea.

The Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In August of 2008, petitioner engaged in a domestic argument with the victim.[2] During the argument, petitioner threatened the victim. The following day, petitioner retrieved his gun from a pawn shop and purchased a holster from a second pawn shop. Petitioner returned home. That same day, another argument ensued between petitioner and the victim. During this argument, petitioner drew the weapon from his holster, disengaged the safety, and shot the victim in the chest, killing

---

[1]Petitioner listed Karen Pszczolkowski, Superintendent of Northern Correctional Facility, as respondent in this matter. However, petitioner is now housed at the Mount Olive Correctional Facility, where Donnie Ames is the superintendent. Accordingly, the appropriate party has been substituted per Rule 41(c) of the West Virginia Rules of Appellate Procedure.

[2]The victim in this case was petitioner's girlfriend.

1

her. Petitioner initially asserted that the gun accidentally fired, but later confessed that he intentionally shot the victim out of anger.

In October of 2008, petitioner was indicted on one count of first-degree murder. Petitioner submitted to a competency and criminal responsibility evaluation and a written evaluation report was filed in January of 2009. The evaluator determined that petitioner had an extensive history of psychiatric diagnoses and treatments. The evaluator also determined that petitioner suffered from impulse control disorder, which may have affected his ability to form the intent to murder the victim. The evaluator opined that petitioner evidenced diminished capacity and that his "circumstance may be viewed in two ways."

First, the evaluator suggested that petitioner experienced a volatile relationship with the victim and "feared losing her." "Being insecure and jealous," petitioner decided that, if he could not have her, no one could have her. Notably, a witness overheard petitioner make a similar statement on the day prior to the shooting. The evaluator further opined that these emotions motivated petitioner to reclaim his gun from the pawn shop and load it before he entered the home. Petitioner confronted the victim about their relationship and shot her when she did not respond as he desired.

Second, the evaluator suggested that, on the day of the shooting, petitioner had sufficient money to reclaim his gun from the pawn shop. While petitioner was handling the gun in the bedroom, the victim confronted him and accused him of sexual misconduct involving a twelve-year-old girl. The topic was especially sensitive to petitioner given his history of being a victim of sexual molestation as a child and his father's imprisonment for sexually molesting petitioner's sister. Petitioner became enraged and entered a "blackout" state during which he shot the victim. Ultimately, the evaluator concluded that petitioner was competent to stand trial and did not lack the substantial capacity to appreciate the wrongfulness of his actions or conform his conduct to the requirements of the law.

On April 16, 2009, petitioner entered into a binding plea agreement with the State in which petitioner agreed to plead guilty to a charge of first-degree murder in return for a life sentence with mercy.[3] The circuit court accepted the plea agreement, and petitioner waived his right to a presentence investigation report. On the same day, the circuit court ordered petitioner to serve a life sentence with the possibility of parole after fifteen years of incarceration, which was consistent with the terms of the plea agreement. Petitioner did not appeal this order.

In December of 2015, petitioner filed the instant petition for a writ of habeas corpus and requested appointment of counsel. Counsel was appointed in January of 2016. Petitioner filed an amended petition in November of 2016. In the amended petition, petitioner alleged that he received ineffective assistance of counsel based upon counsel's failure to explain a diminished capacity defense to him and failure to provide a detailed explanation of the plea, including the term of

---

[3]Petitioner entered this plea agreement pursuant to Rule 11(e)(C) of the West Virginia Rules of Criminal Procedure, which permits the State to "[a]gree that a specific sentence is the appropriate disposition of the case."

2

incarceration. Petitioner further alleged that his guilty plea was involuntary and that counsel failed to discuss his appeal rights with him.

The circuit court held an omnibus hearing in November of 2016. Petitioner testified that he had a history of mental illness. Further, he testified that he had some difficulty reading and writing. Petitioner claimed that when he entered his guilty plea, he did not understand the terms. He testified that his counsel only discussed the plea with him for three minutes and that counsel informed him he would be incarcerated for only seven years and six months. Petitioner also testified that counsel never explained the diminished capacity defense to him and that no evidence was ever reviewed with him. Further, petitioner testified that his counsel filed forms in support of his guilty plea, but that these forms were not in his handwriting. On cross-examination, petitioner clarified that counsel read the forms to support the guilty plea to him, that he provided the answers, and that, due to his poor spelling and handwriting, counsel recorded petitioner's answers. The circuit court asked petitioner if he lied during the plea hearing and he responded affirmatively. The circuit court noted that "it was established through testimony that . . . petitioner may have issues remembering the earlier proceedings."

Ultimately, the circuit court denied petitioner relief on all grounds by order entered on July 26, 2018. Regarding petitioner's claim that his plea was involuntary, the circuit court cited to extensive portions of the plea hearing transcript, wherein the circuit court informed petitioner that he would be subject to a fifteen-year-term of incarceration before becoming parole eligible, and that petitioner acknowledged that sentence multiple times. The circuit court also cited to a portion of the transcript during which it described petitioner's constitutional rights that he would waive by pleading guilty and informed petitioner that he was entitled to appeal the circuit court's final sentencing order. Further, during the plea hearing, petitioner testified that he was taking medication, but confirmed through questioning that the medication did not affect his ability to understand the proceedings. Additionally, the transcript provided that petitioner indicated he was satisfied with his counsel and expressed no complaints with counsel. The circuit court found that petitioner was adequately represented, that he was found criminally responsible for his actions through the opinion of the forensic evaluator, and that he was aware of the rights he was waiving. The circuit court concluded that petitioner's claim that he did not knowingly, voluntarily, and intelligently enter into the plea agreement was without merit.

Regarding petitioner's claim of ineffective assistance of counsel, the circuit court cited its questioning of trial counsel in reference to the diminished capacity defense. Counsel stated, "Judge, there was a diminished capacity defense explored. The State's offer was letting him plea[d] and we took that and explained it to [petitioner] and he made that decision." The circuit court asked petitioner if he believed taking the plea was in his best interest and, at the plea hearing, petitioner agreed that the plea was in his best interest. Next, the circuit court considered the evidence against petitioner, including his confession to law enforcement that he intentionally shot the victim.[4] The

---

[4]The circuit court summarized petitioner's confession to law enforcement:

[The] officer asked if [petitioner] meant to pull the gun out of the holster he replied "yes." He was asked if he meant to point the gun at [the victim] he replied "yes." He was asked if he meant to take the safety off, and at first he said "not really[,"] then

circuit court also found that the State located several witnesses who would testify that petitioner "stated if . . . the victim[] was not going to be with him she was not going to be with anyone and that [the victim] was in an abusive relationship with him." Further, the circuit court found that petitioner's counsel adequately investigated the case; had no good faith basis to claim a diminished capacity or any other defense; that petitioner was aware of the diminished capacity defense and agreed it was not a good defense; and that counsel obtained the possibility of parole for petitioner, "despite overwhelming evidence" to support a conviction. Accordingly, the circuit court concluded that petitioner's ineffective assistance of counsel claim was without merit.

Finally, the circuit court held that petitioner waived his right to appeal his conviction except on the basis of the voluntariness of his guilty plea and the legality of his sentence. The circuit court noted its earlier finding that petitioner's plea was voluntary and concluded that petitioner's appeal would have been meritless if filed. Additionally, the circuit court determined that petitioner did not request counsel to file an appeal. Petitioner now appeals the circuit court's order denying his petition for writ of habeas corpus.

Our review of the circuit court's order denying petitioner's petition for a writ of habeas corpus is governed by the following standard:

> "In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review." Syllabus point 1, *Mathena v. Haines,* 219 W.Va. 417, 633 S.E.2d 771 (2006).

Syl. Pt. 1, *State ex rel. Franklin v. McBride*, 226 W. Va. 375, 701 S.E.2d 97 (2009).

On appeal, petitioner argues the circuit court erred in denying his ineffective assistance of counsel claim because counsel failed to adequately explain the plea and the diminished capacity defense to him. Petitioner argues that he suffered from learning disabilities and, despite his counsel's attempts to explain the proceedings, he did not understand the plea agreement. In support, petitioner notes that he did not personally write in the answers to the forms in support of his guilty plea, but that his counsel filled them out instead. According to petitioner, the circuit court erred in relying on his statements during the plea hearing without considering his intellectual impairments. Based on our review of the record, we find petitioner is entitled to no relief.

> "In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings

---

he said "because [I] was angry[."] When he was asked if he meant to pull the trigger he replied "yes."

4

would have been different." Syl. Pt. 5, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995).

Syl. Pt. 2, *Raines v. Ballard*, 236 W. Va. 588, 782 S.E.2d 775 (2016). Importantly, hindsight is not to be applied to the objective standard:

> "In reviewing counsel's performance, courts must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. Thus, a reviewing court asks whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue." Syl. Pt. 6, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995).

*Raines*, 236 W. Va. at 589, 782 S.E.2d at 776, syl. pt. 3. We note that in cases involving guilty pleas "the prejudice requirement of the two-part test of established by *Strickland . . .* and [*Miller*], demands that a habeas petitioner show that there is a reasonable probability that, but for counsel's error, he would not have pleaded guilty and would have insisted on going to trial." Syl. Pt. 6, in part, *State ex rel. Vernatter v. Warden, W. Va. Penitentiary*, 207 W. Va. 11, 528 S.E.2d 207 (1999). We have held that

> [t]he prejudice prong does not require a defendant to show that going to trial would have been the best objective strategy or even an attractive option. It merely requires the defendant to show a reasonable likelihood that a person in the defendant's shoes would have chosen to go to trial. The decision does not need to be optimal and does not need to ensure acquittal; it only needs to be rational.

*State v. Hutton*, 239 W. Va. 853, 862, 806 S.E.2d 777, 786 (2017).

Here, the circuit court did not err in denying petitioner's ineffective assistance of counsel claim as petitioner failed to meet the requirements of *Strickland*. Petitioner provided testimony that counsel only discussed the plea with him for a few minutes prior to the hearing, which resulted in his confusion of the sentence and other terms. However, testimony during the plea hearing showed that petitioner's counsel discussed the plea with him for "two-and-a-half hours" while completing the forms in support of his guilty plea. Further, in regard to petitioner's contention that he did not complete these forms, petitioner admitted that his answers were recorded by counsel due to his poor spelling and penmanship. Petitioner acknowledged that he was asked, and provided the answers for, the questions on forms in support of his guilty plea. Petitioner testified that he understood all of the circuit court's questions and that his counsel correctly answered all his questions. Petitioner highlights a moment in his plea hearing wherein he asked for a break to ask a question of his counsel and asserts that he asked for the break because he "did not know what to do." However, this illustrates that counsel was able to answer petitioner's questions and assist him. Petitioner was fully aware that he could halt the proceedings if he did not understand or desire to enter his guilty plea. Additionally, the circuit court discussed the diminished capacity defense during the plea hearing and petitioner acknowledged that he believed his decision to plead guilty was in his best interest. Indeed, the State possessed substantial evidence against petitioner,

5

including his confession to intentionally shooting the victim and corroborating witnesses to petitioner's threats to harm the victim. Although the forensic evaluator proposed a diminished capacity scenario, the evaluator also found petitioner did not lack the substantial capacity to appreciate the wrongfulness of his actions or conform his conduct to the requirements of the law. Further, the State's evidence supported the theory that petitioner intentionally committed the crime out of jealousy and anger. Based on this evidence, there is no reasonable likelihood that a person in petitioner's shoes would have chosen to go to trial and risk a life sentence without the possibility of parole. Therefore, petitioner failed to show that counsel's performance was deficient under an objective standard of reasonableness and that he would have chosen to go to trial but for counsel's errors.[5]

Petitioner also asserts that the circuit court erred in finding his plea was voluntary. Petitioner argues that the circuit court failed to address his arguments and instead relied on the record and his statements at the plea hearing. Petitioner argues that counsel failed to advise him of the diminished capacity defense and failed to adequately explain the plea to him. Thus, according to petitioner, the plea could not be voluntarily made. We disagree and find that petitioner is entitled to no relief on appeal.

We have previously held

> [t]he controlling test as to the voluntariness of a guilty plea, when it is attacked either on a direct appeal or in a habeas corpus proceeding on grounds that fall within those on which counsel might reasonably be expected to advise, is the competency of the advice given by counsel.

Syl. Pt. 2, *State v. Sims*, 162 W. Va. 212, 248 S.E.2d 834 (1978). Further,

> [b]efore a guilty plea will be set aside based on the fact that the defendant was incompetently advised, it must be shown that (1) counsel did act incompetently; (2) the incompetency must relate to a matter which would have substantially affected the fact-finding process if the case had proceeded to trial; (3) the guilty plea must have been motivated by this error.

*Id.* at 212, 248 S.E.2d at 835, syl. pt. 3. Petitioner alleges his counsel failed to advise and explain to him the diminished capacity defense. However, this allegation is supported only by petitioner's testimony at the omnibus hearing. At the plea hearing, petitioner testified that he believed the plea agreement was in his best interest despite this defense. Further, it is clear that the State possessed substantial evidence that contradicted any diminished capacity defense that could be presented by

---

[5]Petitioner briefly argues that the circuit court erred in denying his ineffective assistance of counsel claim due to counsel's failure to advise him of his right to appeal. Petitioner asserts that the circuit court erred specifically because it failed to address this contention. However, we find this argument is premised on a misstatement of the order on appeal. Here, the circuit court specifically found that petitioner was entitled to no relief on this ground because he could only challenge the voluntariness of his guilty plea and the legality of his sentence on appeal. In denying petitioner relief, the circuit court found that petitioner's plea was voluntary and that petitioner failed to request an appeal.

petitioner. Indeed, the forensic evaluator expressed that both petitioner's jealous and angry motive or his impulse control disorder were possible theories to explain his actions. Accordingly, even if petitioner's counsel did not fully explain the diminished capacity defense, it would not have substantially affected the fact-finding process because the jury would have considered both possible theories and evidence to support each. Finally, petitioner argues that, during the plea hearing, the circuit court asked petitioner "yes" or "no" questions when determining the voluntariness of petitioner's plea, a practice that was discouraged in *Call v. McKenzie*, 159 W. Va. 191, 220 S.E.2d, 665 (1975). However, petitioner cites to no authority that bars such questioning or states that such practice is impermissible. Moreover, under the facts of this case and the Court's determination that petitioner's counsel was effective, we find no error in the circuit court's finding that petitioner's guilty plea was voluntarily made.

For the foregoing reasons, the circuit court's July 26, 2018, order denying petitioner's writ of habeas corpus is hereby affirmed.

Affirmed.

**ISSUED**: January 17, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison